CALEB MARKER (SBN 269721)
   caleb.marker@zimmreed.com
JENNIFER HAIDAR (SBN 337558)
   jennifer.haidar@zimmreed.com
ZIMMERMAN REED LLP
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELSON MARCELO, PETR BOGOPOLSKIY, JASON SALES, ASHLEY ELLIS, DAVID SIMARD, THIEN LUONG, RHONDA FELIX, STEPHANIE FRIEDMAN, WORKINEH WOLIE, ABDUL REHMAN, DAVID SAMRA, MOHAMMED SHAIKH, SALEH ALBADWI, TANESHA CALDWELL, STARR CAMPBELL, and SERGIO GARNICA,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., and AMAZON LOGISTICS, INC.,<br><br>Defendants. | CASE NO.: 3:21-CV-07843<br><br>**COMPLAINT**<br><br>1. Violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*<br>2. Violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*<br>3. Unlawful Nonpayment of Wages (Cal. Lab. Code Labor Code, §§ 204, 204(c), 207)<br>4. Failure to Provide Itemized Wage Statements (Cal. Lab. Code § 226)<br>5. Failure to Provide Compensation to Former Couriers (Cal. Lab. Code § 201, 202, and 203)<br>6. Failure to Pay Minimum Wage (Cal. Lab. Code§§ 1194, 1194.2, 1197, 1197.1)<br>7. Failure to Reimburse Business Expenses (Cal. Lab. Code § 2802<br>8. Failure to Pay Split Shift Premiums (Cal. Lab. Code§§ 510, 1194)<br>9. Unfair and Unlawful Competition (Cal. Bus. & Prof. Code § 17200 et seq.)<br>10. Failure to Pay Overtime Wages  (Cal. Lab. Code§§ 510, 1194)<br>11. Failure to Provide Meal and Rest Breaks (Cal. Lab. Code§§ 512, § 226.7 (b)-(c))<br>12. Unlawful Deduction from Wages  (Cal. Lab. Code§§ 221, 224)<br><br>**(Jury Trial Demanded)** |

Plaintiffs Elson Marcelo, Petr Bogopolskiy, Jason Sales, Ashley Ellis, David Simard, Thien Luong, Rhonda Felix, Stephanie Friedman, Workineh Wolie, Abdul Rehman, David Samra, Mohammed Shaik, Saleh Albadwi, Tanesha Caldwell, Starr Campbell, and Sergio Garnica, ("Plaintiffs"), bring this Complaint, against Defendants AMAZON.COM, INC. and AMAZON LOGISTICS, INC. (collectively "Amazon" or "Defendants"), and allege, upon personal knowledge as to their own facts, and upon the investigation of counsel as to all other matters:

## INTRODUCTION

1.     Plaintiffs are Amazon Flex delivery drivers, called "couriers," and bring this action to recover lost wages for Defendants' willful violations of federal and California state law.

2.     During all relevant times, Defendants employed Plaintiffs as couriers to provide delivery services to Amazon customers who purchased goods through Defendants' online retail website.

3.     Plaintiffs are current and former Amazon couriers and have not been properly compensated for the work they performed on Defendants' behalf.

4.     During all relevant times, Defendants misclassified Plaintiffs as independent contractors as opposed to employees in willful violation of federal and California state law, causing financial loss to Plaintiffs in the form of unpaid wages.

5.     Plaintiffs bring this action to recover unpaid wages, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## THE PARTIES

6.     Plaintiff Elson Marcelo is an adult resident of San Francisco, California and previously worked as an Amazon courier in San Francisco County from 2017 to 2019. Plaintiff Marcelo spent approximately 2 hours each day logging in and waiting for a shift or "block," had over $100 per month in unreimbursed business expenses, and drove an estimated 500 miles a week in the course of his employment for Amazon. Plaintiff Marcelo worked approximately 10 blocks per week.

7.     Plaintiff Petr Bogopolskiy is an adult resident of Los Angeles, California and works as an Amazon courier in Los Angeles County, California. Plaintiff Bogopolskiy spends more than 2 hours a day logging in and waiting for a block, has approximately $90 per month in unreimbursed business

expenses, and drives an estimated 1,000 miles a week in the course of his employment for Amazon. Plaintiff Bogopolskiy worked approximately 13 blocks per week.

8.      Plaintiff Jason Sales is an adult resident of Daly City, California and worked an as Amazon courier in San Mateo County, California from January of 2020 to June of 2020. Plaintiff Sales spent more than 2 hours a day logging in and waiting for a block, had more than $100 per month in unreimbursed business expenses, and drove an estimated 500 miles a week in the course of his employment for Amazon.

9.      Plaintiff Ashley Ellis is an adult resident of San Diego, California and worked as an Amazon courier in San Diego County, California from January of 2020 to August of 2021. Plaintiff Ellis spent 2 hours a day logging in and waiting for a block, had more than $100 per month in unreimbursed business expenses, and drove an estimated 400 miles a week in the course of her employment for Amazon.

10.     Plaintiff David Simard is an adult resident of San Diego, California and worked as an Amazon courier in San Diego County, California from May of 2019 to January of 2020. Plaintiff Simard spent approximately 30 minutes a day logging in and waiting for a block, had approximately $80 per month in unreimbursed business expenses, and drove an estimated 150 miles a week in the course of his employment for Amazon. Plaintiff Simard worked approximately 4 blocks per week.

11.     Plaintiff Thien Luong is an adult resident of Oakland, California and has worked as an Amazon courier in Alameda County, California since October of 2017. Plaintiff Luong spends approximately 1 hour a day logging in and waiting for a block, has approximately $40 per month in unreimbursed business expenses, and drives an estimated 100 miles a week in the course of his employment for Amazon. Plaintiff Luong worked approximately 4-7 blocks per week.

12.     Plaintiff Rhonda Felix is an adult resident of Sacramento, California and worked as an Amazon courier in Sacramento County, California from May of 2016 to September of 2016. Plaintiff Felix spent approximately 1 hour a day logging in and waiting for a block, had approximately $60 per month in unreimbursed business expenses, and drove an estimated 75 miles a week in the course of her employment for Amazon.

13.     Plaintiff Stephanie Friedman is an adult resident of Oakland, California and worked as an Amazon courier in San Mateo County, California from June of 2019 to August of 2019. Plaintiff Friedman spent approximately 2 hours a day logging in and waiting for a block, had more than $100 per month in unreimbursed business expenses, and drove an estimated 400 miles a week in the course of her employment for Amazon. Plaintiff Friedman worked approximately 8 blocks per week.

14.     Plaintiff Workineh Wolie is an adult resident of Campbell, California and worked as an Amazon courier in Santa Clara County, California from May of 2017 to May of 2020. Plaintiff Wolie spent more than 2 hours a day logging in and waiting for a block, had more than $100 per month in unreimbursed business expenses, and drove an estimated 550 miles a week in the course of her employment for Amazon. Plaintiff Wolie worked more than 10 blocks per week.

15.     Plaintiff Abdul Rehman is an adult resident of Sacramento, California and has worked as an Amazon courier in Sacramento County, California since December of 2016. Plaintiff Rehman spends approximately 1 hour a day logging in and waiting for a block, has approximately $40 per month in unreimbursed business expenses, and drives an estimated 500 miles a week in the course of his employment for Amazon. Plaintiff Rehman worked approximately 4 blocks per week.

16.     Plaintiff David Samra is an adult resident of Woodland Hills, California and worked as an Amazon courier in Ventura County, California from September of 2017 to November of 2019. Plaintiff Samra spent more than 2 hours a day logging in and waiting for a block, had more than $100 per month in unreimbursed business expenses, and drove an estimated 300 miles a week in the course of his employment for Amazon. Plaintiff Samra worked more than 10 blocks per week.

17.     Plaintiff Mohammed Shaikh is an adult resident of San Francisco, California and worked as an Amazon courier in San Mateo County, California in 2015. Plaintiff Shaikh spent approximately 1.5 hours a day logging in and waiting for a block, had approximately $480 per month in unreimbursed business expenses, and drove an estimated 300 miles a week in the course of his employment for Amazon. Plaintiff Shaik worked approximately 4 blocks per week.

18.     Plaintiff Tanesha Caldwell is an adult resident of Vallejo, California and worked as an Amazon courier in Sonoma County from 2017 to 2020. Plaintiff Caldwell spent approximately 3 hours a day logging in and waiting for a block, had approximately $385 per month in unreimbursed business

expenses, and drove an estimated 500 miles a week in the course of her employment for Amazon. Plaintiff Caldwell worked approximately 5 blocks per week.

19. Plaintiff Starr Campbell is an adult resident of Oakland, California and worked as an Amazon courier in Alameda County, California from 2019 to 2020. Plaintiff Campbell spent approximately 1 hour a day logging in and waiting for a block, had approximately $800 per month in unreimbursed business expenses, and drove an estimated 60 miles a week in the course of her employment for Amazon. Plaintiff Campbell worked approximately 2 blocks per week.

20. Plaintiff Sergio Garnica is an adult resident of Bellflower, California and worked as an Amazon courier in Los Angeles County, California from 2018 to 2019. Plaintiff Garnica spent approximately 4.5 hours a day logging in and waiting for a block, had approximately $1200 per month in unreimbursed business expenses, and drove an estimated 200 miles a week in the course of his employment for Amazon. Plaintiff Garnica worked approximately 7 blocks per week.

21. Defendant Amazon, Inc., is a Delaware corporation with its headquarters and primary place of business in Seattle, Washington.

22. Defendant Amazon Logistics, Inc., is a Delaware corporation headquartered in Seattle, Washington. Defendant Amazon, Inc., and Defendant Amazon Logistics, Inc., are collectively referred to as "Amazon" or "Defendants."

## JURISDICTION AND VENUE

23. This Complaint alleges causes of action under the laws of the United States, including the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.* ("FLSA"). Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331.

24. This Court has personal jurisdiction over Defendants because Defendants are licensed to do business in California or otherwise conduct business in the State of California, a substantial portion of the wrongdoing alleged by Plaintiffs occurred in the State of California and in this District, and Defendants have sufficient minimum contacts with and otherwise have purposefully availed themselves of the markets of the State of California and this District such that it is fair and just for Defendants to adjudicate this dispute in this District.

25.     Venue is proper in this District because the Defendants are subject to personal jurisdiction in this District and a substantial part of the events, transactions, and omissions giving rise to the claims asserted herein occurred in this District, and a substantial portion of Defendants' alleged wrongdoing is believed to have occurred in this District.

## GENERAL ALLEGATIONS ABOUT AMAZON

26.     Amazon is a Seattle-based online retailer that contracts with couriers to deliver consumer goods to its customers throughout the country. In order to deliver customer goods rapidly and at low cost, Defendants created Amazon Flex ("Flex"), Amazon's in-house delivery program through which Defendants hire couriers as independent contractors to deliver goods to customers.

27.     The services performed by Flex couriers are integral to Defendants' business. The Flex program has allowed Defendants to maintain high profits by failing to pay couriers the legal minimum wage and complying with standard labor laws in California. By taking advantage of the low costs of labor through bringing delivery services in house, Defendants have attempted to avoid wage laws by misclassifying couriers as independent contractors.

28.     Defendants exercise significant control over the amount of revenue couriers earn, including by unilaterally setting delivery rates for each shift, known as "blocks," regardless of the number of packages within each block. By incorrectly labeling couriers as independent contractors, Defendants have shifted costs of delivery to the couriers, all the while ignoring compensable time such as waiting for blocks to become available, waiting periods at warehouses, and the reality of traffic-induced delays in metropolitan areas. Without relying on the couriers to bear the burden of transportation, traffic, and waiting times, Defendants would have had to reduce their profit margin by paying wages due to these employees.

29.     In addition, Defendants instruct couriers on how to interact with customers, how to handle deliveries, and how to deal with issues encountered while making deliveries. Couriers must follow Amazon's instructions regarding which deliveries to make, in what order, and which route to take. Similar to Amazon's warehouse and distribution center workers, whom Amazon treat as employees, couriers are essentially low skilled workers running routes and delivering packages as dictated by Amazon. Amazon exerts almost complete control over couriers in their day-to-day work.

30.     Amazon does not have a set shift schedule for couriers. Amazon couriers begin their work for Amazon  by logging in to the Amazon Flex App, searching for and waiting for a block to become available, and ultimately selecting a block if one becomes available. Shifts have typically been four hours or six hours long. Amazon does not tell the courier through the Flex App how many packages will need to be delivered in each shift. The Couriers only find out how many packages they must deliver when they show up at the Amazon Warehouse. There, Amazon assigns each courier the packages that the courier must deliver during that shift. The couriers do not have an option to accept or decline any particular package or delivery. Amazon courier shifts are extremely popular, so usually couriers, who have been waiting after logging in for a shift to become available, take the shifts almost immediately or very soon after Amazon posts them on the Flex App. Amazon exerts control over the shift bidding process, and essentially drives demand from the couriers by keeping the supply of shifts artificially low, controlling the timing of when shifts become available for couriers to take. Because Amazon does not have a set shift schedule, Amazon typically parcels out the shifts hours or maybe the day before the shift begins, requiring active vigilance by couriers to monitor the dispatching feature of the Flex App. In a normal shift system, a company's employees would have ample time (usually weeks ahead) to consider what shifts best fit their schedule, matching the number of shifts available to the available number of workers. By making shifts available just hours or the day before the shift, Amazon essentially forces all its couriers (who have been checking the App constantly) to bid on these limited number of shifts (one day's worth), all at the same time. This has the effect of artificially driving demand (by numerous couriers), for a limited supply of shifts (one day's worth of shifts).

31.     Because couriers usually have to "fight" for these shifts among other couriers, couriers are required by this artificially driven demand to log in and check the Flex App constantly, wait for a shift to pop up, and accept the shift before someone else takes it. This shift selection process was created by Amazon, and has the direct of effect of requiring couriers to spend unpaid waiting time in order to receive an assignment from Amazon. Many Plaintiffs have spent upwards of two hours or more per day, waiting for Amazon shifts. Couriers can be penalized or terminated for missing scheduled shifts and deliveries.

32.     Amazon requires drivers to arrive at the Amazon warehouse and check in for a shift

fifteen (15) minutes prior to the start of the shift. Due to the popularity of Amazon Flex shifts, however, and the failure of Amazon to properly plan for and scale its hugely popular distribution business, seasoned Amazon couriers, including Plaintiffs, know that they must line up in their vehicles in front of Amazon's warehouse at least thirty (30) minutes before the start of a shift to receive their packages with sufficient time to deliver them all during their assigned time block. Amazon does not pay couriers for the waiting time before the start of a shift. Amazon has complete control over how its warehouses and distribution centers assign and distribute packages to drivers.

33.     If a courier does not deliver all the packages assigned to them by the time their time block ends, or if the packages are undeliverable for any other reason, such as inaccessible addresses or locked gates, Amazon requires couriers to return the undelivered packages back to the Amazon warehouse. Amazon does not pay for this time worked after the end of each block.

34.     Couriers must follow additional rules and requirements imposed by Amazon, and are subject to termination, at Amazon's discretion, based on couriers' non-adherence to requirements such as rules regarding conduct with customers, timeliness in making deliveries, scanning of packages, and conduct when pickup or returning packages to the warehouse.

35.     Plaintiffs operate no distinct business of their own, have no specialized skills, and are supervised and controlled by Defendants through myriad rules, policies, and pricing and rating systems.

36.     California law considers Plaintiffs to be employees, as they are not free from the control and direction of Amazon in connection with the performance of the work, either under the contract for the performance of the work or in fact; they perform work that is not outside the usual course of Amazon's business; and they are not customarily engaged in an independently established trade, occupation, or business of the same nature as the courier work performed. Plaintiffs also provide a service that benefits Defendants; driving for Amazon requires no skills or experience beyond a driver's license, vehicle, and insurance; Plaintiffs' tenure was for an indefinite period of time; Defendants prohibit Plaintiffs from setting rates of pay for their services; Defendants maintain requirements for customer service and can terminate Plaintiffs based on low customer ratings; and Defendants retain the right to terminate Plaintiffs for any reason, without explanation, at any time.

37.     Amazon communicates directly with customers and resolves all customer support issues itself when a customer's expectations are not met during a delivery. Based on customer feedback and ratings, couriers such as Plaintiffs may be terminated at Amazon's sole discretion and without justification.

38.     Based on Amazon's misclassification of its couriers as independent contractors, Amazon requires its couriers to pay for many expenses necessary to perform their jobs, including expenses for vehicle maintenance, gas, tolls, and smart phones with data plans. In addition, Defendants do not provide workers' compensation or medical paid time off for injuries suffered on the job, including from carrying heavy packages. Amazon does not pay for traffic tickets incurred by couriers while performing deliveries. Amazon's compacted schedule for each shift may, in fact, incentivize or prompt couriers (through fear of termination) to incur traffic tickets.

39.     In light of the expenses couriers incur in the regular course of their jobs and extra time outside worked outside of their blocks, couriers' hourly wages often fall below federal, state, and local minimum wage laws.

40.     Importantly, Defendants improperly benefitted from couriers' uncompensated work while waiting for their scheduled shifts and undergoing waiting periods at distribution sites. Couriers receive an hourly rate of pay for scheduled blocks, though they often require more time to complete their deliveries than their scheduled blocks allow, often times due to uncontrollable interruptions such as unanticipated traffic, but equally often, due to factors entirely within Amazon's control, such as the first delivery location of a shift being far from the Amazon warehouse, forcing couriers to drive twenty (20) minutes or more from the warehouse to the first delivery.

41.     Couriers are also required to return undeliverable packages to warehouse centers. The additional time incurred by returning to a warehouse center is not factored into scheduled shifts, and couriers do not receive additional compensation for this time. This unpaid time further pushes couriers' wages below federal, state, and local minimum wage.

42.     Amazon is a known industry leader in the gathering and use of information. In fact, Amazon prides itself on the gathering and use of information to drive efficiency (through its services such as Amazon Web Services (AWS) and, of course, its online shopping fulfillment service).

Defendants have custody and control of exact records that show the hours couriers actually worked, including unpaid time when couriers were logged into Amazon's Flex App checking for and waiting to schedule blocks, the time packages were picked up and delivered, the time when undelivered packages were returned after a block had expired, and the exact GPS location and time of where every courier were before and after each shift. Despite having this information available to them, Defendants failed to pay full wages when due, pay full wages on discharge, provide accurate wage stubs, and pay minimum wages as required by law. Defendants further failed to pay for Plaintiffs' overtime labor, business expenses, and payroll taxes. Amazon also does not give couriers complete wage statements. For their hard work, the only information Amazon provides couriers on their direct deposit notification is the date of the block, how many hours were set for the block, and the direct deposit amount.

**Exemplar Day—Plaintiff Tanesha Caldwell**

43.    Plaintiff Tanesha Caldwell alleges the following facts as an exemplar day of her working for Amazon:

44.    Ms. Caldwell worked for Amazon Flex between 2017 and 2020.

45.    Ms. Caldwell is a resident of Vallejo, California and worked primarily out of Amazon's Richmond, California distribution center, which was approximately 16 miles away. Ms. Caldwell generally worked the late afternoon and evening shifts Monday through Friday.

46.    On a typical work day, Ms. Caldwell would log into the Amazon Flex App in the morning to start checking for available shifts. Consistent with the experience of other couriers, Amazon shifts were always in high demand, and shifts would often appear, and be taken immediately or shortly after they become available by other couriers. So typically, Ms. Caldwell had to check the Amazon App throughout the day to see if shifts were available. When a shift did become available, Ms. Caldwell had to consider whether each available shift's timing fit her schedule, and whether the amount offered made sense, bearing in mind that Amazon did not tell her what city the route would be in, or how many packages she would have to deliver. Often times, while she was considering a shift, it would disappear after another courier claimed it before she could. Ms. Caldwell spent approximately three unpaid hours per day checking for and attempting to claim shifts in the Amazon App.

47.     During her time working for Amazon Flex, Amazon typically offered four-hour shifts valued between $50 per shift to $80 per shift. Consistent with the experience of other Amazon couriers, Ms. Caldwell knew that in order to start her shift on time, she had to line up with the other couriers in front of Amazon's warehouse at least half an hour before the start of her block.

48.     On a typical day, when she started her four-hour block at the warehouse package pickup point, Amazon would often assign Ms. Caldwell approximately thirty-five (35) packages to deliver. Amazon frequently assigned her blocks in Petaluma or Santa Rosa, and it would take approximately 1.5 hours in travel time to reach these destinations. Because Petaluma and Santa Rosa were so far from the Amazon warehouse, Ms. Caldwell was often unable to complete delivery of all assigned packages assigned to before the end of her four-hour shift.

49.     In such cases, Amazon instructed Ms. Caldwell either to deliver all packages in Petaluma outside the four-hour window, or to bring the undelivered packages back to the Amazon warehouse in Richmond. Faced with the prospect of driving another hour or more back to the Amazon warehouse, Ms. Caldwell often chose to work past the end of her four-hour shift in order to deliver all the packages and avoid driving them back to the Amazon Warehouse. Having complete control over the assignment of route, and not giving couriers the opportunity to decline routes (or face termination), Amazon forced couriers like Ms. Caldwell to perform numerous and lengthy work duties in support of Amazon's delivery business outside the of her assigned blocks. Despite these extra hours, Ms. Caldwell was only compensated for individual 4-hour blocks.

50.     When Ms. Caldwell would finish all deliveries in Petaluma, Amazon would not pay Ms. Caldwell for the compulsory travel time back to her house in Vallejo from her work sites in Petaluma. Under California law compulsory travel time is compensable when employees are forced to travel long distances to distant work sites. The California Division of Labor Standards Enforcement measures such travel time as "the difference between the time it normally takes the employee to travel from his or her home to the assigned work place and the time it takes the employee to travel from home to the distant work site." DLSE Opinion Letter, April 22, 2003.

51.    Normally, the driving time and mileage above and beyond an employee's normal commute would be compensable and reimbursable. However, Defendants knowingly and purposefully failed to reimburse Ms. Caldwell for business expenses in order to avoid these extra costs.

52.    Therefore, a summary of a typical day for Ms. Caldwell to work for Amazon Flex in Petaluma is as follows:

| *Ms. Caldwell's Exemplar Day Calculations* | |
|---|---|
| *Checking App/Bidding on Shifts* | **3 hours** |
| *Mandatory Warehouse Waiting Period* | **0.5 hour** |
| *Assigned Amazon Block* | **4 hours** |
| *Driving Undelivered Packages Back to Warehouse/ Compulsory Travel Time Back to Residence* | **1 hour** |
| ***Total*** | **8.5 hours** |

53.    As can be seen by this exemplar day, Ms. Caldwell spends upwards of eight and a half (8.5) hours or more per day, in order to properly complete a four-hour Amazon block. Without accounting for business expenses paid by Ms. Caldwell, on a $80 Amazon shift, Ms. Caldwell would average out to approximately $9.41 per hour. On a $50 Amazon shift, Ms. Caldwell would average out to approximately $5.88 per hour, working for Amazon.

54.    While working for Amazon, Ms. Caldwell typically spent $15 per day for gasoline, which was uncompensated.

55.    Ms. Caldwell incurred significant wear and tear on her vehicle, in addition to increased maintenance requirements such as more frequent oil changes, which, again, were all uncompensated. On a typical shift for Petaluma, Ms. Caldwell drove approximately 36 miles from Amazon's warehouse to the first delivery location, approximately 20 miles delivering the packages from location to location, and then drove another 36 miles back to the Amazon warehouse in order to return undeliverable packages. Total miles driven by Ms. Caldwell in this example would be approximately 92 miles for the

shift. At the Internal Revenue Service's published $0.56 per mile reimbursement rate, this would require reimbursement by Amazon of $51.52 to Ms. Caldwell (this includes mileage and gas).

56. During her time working for Amazon, Ms. Caldwell's cell phone service cost approximately $180 per month, or approximately $6 per day, also uncompensated by Amazon.

57. Continuing with the previous example, a typical week for Ms. Caldwell would entail her working for Amazon 5 shifts over 5 days. Ms. Caldwell would have made a maximum of approximately $400 from Amazon ($80 x 5 shifts), while working a total of approximately 42.5 hours.

58. However, against that income of $400, Ms. Caldwell would have incurred unreimbursed expenses of approximately $287.60 per week. Amazon is essentially receiving Ms. Caldwell's labor for free.

### Exemplar Week Business Expenses

| | |
|---|---|
| *IRS Mileage Reimbursement Estimations (including wear & tear)* | -$257.60 |
| *Cellphone Data Charges* | -$30 |
| *Subtotal* | -$287.60 |
| *Amazon Pay* | $400 |
| *Net Pay* | *$112.40* |

59. When expenses are accounted for with respect to total compensation, Ms. Caldwell is left with $112.40 in weekly earnings in this example. Specifically, Ms. Caldwell's hourly rate was approximately $2.65 ($112.40 ÷ 42.5 hours).

60. Plaintiffs seek compensation for all hours worked, all penalties, liquidated damages, and other damages permitted by law, restitution or disgorgement of all benefits obtained by Defendants from their unlawful business practices, injunctive and declaratory relief, punitive damages, all forms of equitable relief permitted by law, and reasonable attorneys' fees and costs.

**FIRST BASIS FOR RELIEF**

**Failure to Pay Minimum Wage in Violation of the FLSA**

61.     Plaintiffs re-allege all preceding and succeeding allegations by reference as if fully set forth herein.

62.     Defendants violated 29 U.S.C. § 206(a) by failing to pay Plaintiffs the applicable minimum wage of $7.25 for every compensable hour of labor they performed. For instance, employees like Ms. Caldwell, who worked an 8.5-hour day, would have to have been paid at least $61.63, rather than the $50 she sometimes received.

63.     Defendants' failure to pay Plaintiffs the federally mandated minimum wage was a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). As a consequence of Defendants' violations of the FLSA, Plaintiffs are entitled to recover their unpaid minimum, plus an additional amount in liquidated damages, costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

**SECOND BASIS FOR RELIEF**

**Unpaid Overtime Under the FLSA**

64.     Plaintiffs re-allege all preceding and succeeding allegations by reference as if fully set forth herein.

65.     Defendants have willfully failed to pay one and one-half times the regular rate of pay for its delivery drivers across the country who have worked in excess of forty (40) hours per week, in violation of the FLSA, 29 U.S.C. §207(a)(1).

66.     As a consequence of Defendants' violations of the FLSA, Plaintiffs are entitled to recover their unpaid overtime wages, plus an additional amount in liquidated damages, costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

**THIRD BASIS FOR RELIEF**

**Unlawful Nonpayment of Wages (Cal. Lab. Code Labor Code, §§ 204, 204(c), 207)**

67.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

68.     California Labor Code section 226 provides:

"All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."

69.    Couriers were entitled to timely payment of at least minimum wage for all time spent waiting for shifts to become available, time spent undergoing waiting periods at distribution centers, times spent returning packages to the warehouse or delivering packages after a block expired, and expenses improperly imposed on couriers. Defendants intentionally failed to pay couriers for this compensable time and violated sections 204, 204(c), and 207 of the California Labor Code.

**FOURTH BASIS FOR RELIEF**

**Wage Statement Violations**

70.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

71.    California Labor Code section 226 provides:

"Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

72.    In this case, Defendants have failed to provide such wage statements to Plaintiffs in that their wage statements do not include, without limitation, their accurate gross wages earned, all overtime hours worked, net wages earned, itemized compensation for rest periods, or all applicable hourly rates

in effect during the pay period, and the corresponding number of hours worked at each hourly rate by the employee.

73.     Defendants have intentionally failed to put the information required by section 226(a) on the paycheck stubs. Defendant violated section 226(a) and Wage Order 4 by failing to maintain accurate records and by failing to furnish each employee with accurate itemized wage statements either semimonthly or for each pay period that reflected all time spent waiting for shifts to become available, time spent undergoing waiting periods at distribution centers, times spent returning packages to the warehouse or delivering packages after a block expired, and expenses improperly imposed on couriers. Defendant's refusal to properly record these times and expenses, to include it in its itemized wage statements, or to properly pay its employees for this time was willful and intentional. As a result of these violations, Plaintiffs and members of the California Class suffered injury because they were not paid for all hours worked.

74.     Cal. Labor Code § 226(b) provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, the total hours worked by the employee, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial violation of one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000).

**FIFTH BASIS FOR RELIEF**

**Failure to Provide Compensation to Former Couriers**

75.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

76.     Cal. Lab. Code § 203 states that if an employer willfully refuses to pay, without abatement or reduction, in accordance with Labor Code §§ 201 and 202, any wages of an employee who is discharged or who quits, the employee's wages shall continue as a penalty for up to 30 days from the due date, until paid or until an action to recover those wages is commenced. *See, e.g.*, California Labor Code Sections 201, 202, and 203.

77.     Couriers who are no longer employed by Defendants were entitled to timely payment, upon cessation of their employment, of at least minimum wage for all time spent waiting for shifts to become available, time spent undergoing waiting periods at distribution centers, times spent returning

packages to the warehouse or delivering packages after a block expired, and to overtime wages for such time that exceeded 8 hours in a day or 40 hours in a week. Additionally, Defendants were required to reimburse business expenses and pay split shift premiums. Defendants' refusal to timely pay such wages was willful. Defendants knew or should have known that such wages were due and payable to couriers, yet failed to pay them in a timely manner, as required by sections 201 and 202. Those wages remain unpaid.

78.     Pursuant to Labor Code section 203, couriers who are no longer employed by Defendants are entitled to a penalty in the amount of his or her daily wage multiplied by 30 days.

## SIXTH BASIS FOR RELIEF

### Failure to Pay Minimum Wages

79.     Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

80.     Defendants did not pay Plaintiffs the California minimum wage for all hours worked. During the relevant employment period, Defendants required Plaintiffs to work at rates that fell below the mandated minimum wage. *See, e.g.*, IWC Minimum Wage Order No. M-2014; Labor Code § 1182.12, 1194, 1197.

81.     Plaintiffs were not exempt from the state's Minimum Wage Orders as employees. Defendants were aware of their obligation to pay minimum wages but failed to do so.

82.     When one accounts for uncompensated time checking for and waiting for shift assignments, for uncompensated time waiting at the warehouse to receive packages, for time spent returning packages to the warehouse or delivering packages after a block expired, and expenses improperly imposed on couriers, the amount of money Defendants provided couriers fell below minimum wage requirements. This unlawful treatment is illustrated above through the exemplar calculations.

83.     Plaintiffs seek these wages, liquidated damages, penalties, attorneys' fees and costs, and interest under Cal. Labor Code § 1194, 1194.2, 1197, 1197.1.

84.     Defendants violated several municipal ordinances. Defendants did not pay Plaintiffs the San Francisco minimum wage for all time worked as required by the San Francisco Minimum Wage Ordinance, San Francisco Administrative Code, Chapter 12R (currently $16.32 per hour).

85.     Defendants did not pay Plaintiffs the Los Angeles minimum wage for all time worked as required by the Los Angeles Minimum Wage Ordinance, Los Angeles Municipal Code, Chapter 18, Article 7, section 187.00 et seq. (currently $15.00 per hour).

86.     Defendants did not pay Plaintiffs the San Diego minimum wage for all time worked as required by the City of San Diego Earned Sick Leave and Minimum Wage Ordinance, San Diego Municipal Code, Chapter 3, Article 9, Division 1 (currently $14.00 per hour).

### SEVENTH BASIS FOR RELIEF

### Failure to Reimburse for Business Expenses

87.     Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

88.     Cal. Labor Code §2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer ... ."

89.     During the relevant employment period, Plaintiffs were required to maintain smart phones with data plans to work for Defendants, and pay for all expenses related to the business use of their phones and related business expenses during the discharge of their duties for Defendants. However, Defendants failed to reimburse Plaintiffs for these expenditures. Plaintiffs were also required to provide their own vehicles to transport deliveries and were solely responsible to pay for tolls while driving, to maintain the vehicle's upkeep, pay for fuel, and insurance.

90.     Defendants are and were required to indemnify and reimburse Plaintiffs for all expenditures or losses incurred when made in the discharge of their duties but failed to do so as required under Cal. Labor Code §2802. As a proximate result of Defendants' conduct, Plaintiffs suffered damages, including prejudgment interest under Cal. Labor Code §2802(b) and costs and attorneys' fees under Cal. Labor Code §2802(c).

**EIGHTH BASIS FOR RELIEF**

**Failure to Pay Split Shift Premium Wages**

**(Cal. Lab. Code§§ 204, 1194, 1197, IWC Wage Order 7-2001(4)(C))**

91.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

92.     Cal. Labor Code § 1194 provides that any employee who receives less than the legal minimum wage applicable is entitled to recover in a civil action the unpaid balance of the full amount of the applicable minimum wage, plus interest thereon, attorney's fees, and the costs of suit.

93.     IWC Wage Order No. 7-2001(4)(C) mandates that employees who work a split-shift are entitled to receive the equivalent of one hour's pay at minimum wage for each day on which an employee works a split-shift. Section 2(R) that Wage Order defines the term "split-shift" as "a work schedule which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."

94.     Defendants required couriers, including Plaintiffs, to work at least two shifts in a day, which were interrupted by non-paid, non-working time of at least one hour that were not applicable as rest or meal periods. During the first shift, couriers were required to log in to the Flex App to look for and accept work assignments. This shift lasted between approximately 30 minutes and 3 hours for Plaintiffs. During the second shift, couriers drove to the warehouse, picked up packages, and delivered them. When Plaintiffs picked up a second block in the same day, this would be considered a third shift. This time in between blocks was and is not compensated for, in violation of Cal. Labor Code §§ 1194, 1197, and lWC Wage Order No. 7-2001(4)(A) and (B).

95.     Defendants have access to records that measure the exact dates and times when Plaintiffs were scheduled to work two shifts with non-compensable time in between. Amazon knows (1) when each Plaintiff logged in to the Flex App to search for blocks, (2) when each Plaintiff accepted a block, (3) when each Plaintiff picked up packages, (4) when each Plaintiff completed a block, (5) when each Plaintiff completed their deliveries or brought undelivered packages to the warehouse. The unlawful failure to pay split shift premiums when due caused Plaintiffs and all class members to suffer and continue to suffer damages in amounts which are presently unknown to Plaintiffs but which will be ascertained at trial during discovery.

96.     Pursuant to Cal. Labor Code §§ 1194 and 1194.2, Plaintiffs are entitled to recover from Defendants the full balance of any and all unpaid wages, interest thereon, liquidated damages equal to the full amount of unpaid wages, and interest thereon, attorney's fees, and costs of suit.

**NINTH BASIS FOR RELIEF**

**Violation of Cal. Bus. & Prof. Code § 17200, *et seq.***

97.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

98.     Cal. Bus. & Prof. Code § 17204 prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice." Plaintiffs seek compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices. Defendants' conduct, as described above, has been and continues to be deleterious to Plaintiffs. Plaintiffs seek to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure § 1021.5.

99.     The conduct of Defendants, as described above, constituted unlawful, unfair, unconscionable, fraudulent business acts or practices, or a combination of such statutory violations, which injured Plaintiffs and caused them loss of money. Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors, who did not engage in such practices such as failing to pay wages due, ignoring compensable waiting periods, failing to pay business expenses, and failing to provide sufficient wage statements. The misconduct, as alleged herein also violated established law and public policies that seek to regulate the employer-employee relationship in California. Failing to pay couriers the minimum wage and adhere to standard labor practices is against the goals and policies of the State of California.

100.    Defendants have engaged and continue to engage in unfair and unlawful business practices alleged in the preceding counts in California by practicing, employing, and utilizing the employment practices outlined above, inclusive, to wit, by: (a) failing to pay to Plaintiffs minimum wage as required by California law and FLSA; (b) failing to compensate Plaintiffs for time spent waiting for their shifts and their packages and returning to and spending time at Amazon's distribution sites; (c) failing to furnish accurate wage statements pursuant to Labor Code § 226; and (d) failing to maintain accurate timesheet and payroll records pursuant to 29 C.F.R. § 516.1.

101.    The acts complained of herein, and each of them, constitute unfair, unlawful, unconscionable, fraudulent business practices, or a combination of such statutory violations, in violation of Cal. Bus. & Prof. Code § 17200 *et seq.* Defendants' acts and practices described herein offend established public policies, including those set forth in applicable wage and hour laws, and involve business practices that are immoral, unethical, oppressive, or unscrupulous.

102.    The unfair business practices set forth above have and continue to injure Plaintiffs and the general public and cause injury and the loss of money, as described above. These violations have unjustly enriched Defendants at the expense of Plaintiffs. Defendants' actions deprived Plaintiffs of their expenses and full pay; consequently, Plaintiffs have lost money and property, are entitled to restitution in the amount of the wages and expenses that Defendants withheld. As a result, Plaintiffs are entitled to restitution and an injunction.

103.    Plaintiffs seek full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired or converted by the Defendants by means of the unfair practices complained of herein within the last four years preceding the filing of the complaint in this action.

104.    Plaintiffs are informed and believe, and, on that basis, allege that at all times mentioned Defendants have engaged in unlawful, deceptive and unfair business practices, as proscribed by California Business and Professions Code § 17200 et seq., including those set forth above, thereby depriving Plaintiffs of the minimum working condition standards and conditions due to them under the California laws and Industrial Welfare Commission wage orders as specifically described therein.

**TENTH BASIS FOR RELIEF**

**Failure to Pay Overtime Wages**

105.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

106.    During the relevant employment period, Defendants were required to pay all non-exempt employees overtime compensation for all hours worked over 8 hours per day, for more than 40 hours worked per week, or for hours worked on the seventh consecutive work day. *See, e.g.*, California Labor Code Sections 510, 1194, and 1197, as well as Sections 200, *et seq.*, 1174, and 1174.5. Defendants failed to do so.

107.    Plaintiffs are non-exempt employees.

108.   Defendants' conduct described herein violates IWC Wage Order No. 4-2001 of the California Industrial Welfare Commission and the California Labor Code Sections 510, 1194, and 1197, as well as Sections 200, *et seq.*, 1174, and 1174.5.

109.   As a result of Defendants' conduct, Plaintiffs have suffered damages and was deprived of overtime wages. Plaintiffs seek these wages, attorneys' fees and costs, and interest under Cal. Labor Code § 1194.

## ELEVENTH BASIS FOR RELIEF

### Failure to Provide Meal and Rest Breaks

110.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

111.   During the relevant employment period, Plaintiffs regularly worked in excess of five (5) hours per day without being afforded a meal period of not less than 30 minutes as required by Labor Code §§ 226.7.

112.   California Labor Code §512 provides that an employer may not employ an employee for a work period of more than five (5) hours per day without providing the employee with a meal period of not less than 30 minutes.

113.   Further, California Labor Code § 226.7 (b)-(c) provides:

"(b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.

(c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

114.    As a result of Defendants' conduct in not providing for adequate meal periods, Plaintiffs are entitled to one additional hour of pay at their regular rate as a penalty under Labor Code § 226.7 for each day in which the proper meal period was not provided. In addition, Plaintiffs are entitled to interests, penalties, attorneys' fees and costs pursuant to Labor Code §§ 218.5 and 218.6.

## TWELFTH BASIS FOR RELIEF

### Unlawful Deductions from Wages

115.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

116.    Cal. Labor Code §§ 221 and 224 provide that an employer may only withhold amounts from an employee's wages when (1) required or empowered to do so by state or federal law; (2) when a deduction is expressly authorized in writing by the employee to cover insurance premiums, benefit plan contributions, or other deductions not amounting to a rebate on the employee's wages; or (3) when a deduction to cover health, welfare or pension contributions is expressly authorized by a wage or collective bargaining agreement.

117.    During the relevant employment period, Defendants unlawfully made deductions from Plaintiffs' compensation – by shifting those costs to Plaintiffs without reimbursement – to cover Defendants' ordinary business expenses, including but not limited to, the costs of equipment and tools necessary for rendering services, including vehicle and smart phone expenses as detailed above.

118.    Defendants are liable to Plaintiffs pursuant to Cal. Labor Code §§ 221 and 224 for the withheld compensation.

119.    As a result of Defendants' conduct, Plaintiffs have suffered damages and seek penalties, reasonable attorneys' fees, and costs under Cal. Labor Code §§ 218.5 and 1194.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

A.    Declare and find that Amazon violated FLSA, 29 U.S.C. 201, *et seq.* by failing to pay plaintiffs and other similarly situated Amazon couriers the federal minimum wage and overtime wages;

B.    An award to Plaintiffs for unpaid wages owed to them pursuant to the FLSA;

C.    A declaratory judgment that the policies and practices complained of herein are unlawful under the laws of California;

D.     An award of appropriate equitable and injunctive relief to remedy Defendants' violations of the laws of California, including but not limited to an order enjoining Defendants from continuing their unlawful policies and practices;

E.     An award of damages, statutory penalties, and restitution to be paid by Defendants according to proof;

F.     An award of general damages according to proof;

G.     An award of reasonable attorneys' fees and costs incurred by Plaintiffs in this action pursuant to state and federal law;

H.     An award of pre- and post-judgement interest to Plaintiffs on these damages; and

I.     Such further relief as this Court deems equitable, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs seek a trial by jury for all appropriate issues on each and every claim for relief in this Complaint.

ZIMMERMAN REED LLP

Dated: October 6, 2021          By:     /s/ Caleb Marker
                                        Caleb Marker
                                        Jennifer Haidar
                                        2381 Rosecrans Ave., Suite 328
                                        Manhattan Beach, CA 90245
                                        Tel. (877) 500-8780
                                        Fax (877) 500-8781

                                        *Attorneys for Plaintiffs*