1   MORGAN, LEWIS & BOCKIUS LLP
    Max Fischer, Bar No. 226003
2   Brian D. Fahy, Bar No. 266750
    300 South Grand Avenue
3   Twenty-Second Floor
    Los Angeles, CA 90071-3132
4   Tel: +1.213.612.2500
    Fax: +1.213.612.2501
5   max.fischer@morganlewis.com
    brian.fahy@morganlewis.com
6
    MORGAN, LEWIS & BOCKIUS LLP
7   Brian D. Berry, Bar No. 229893
    Miranda M. Rowley, Bar No. 328173
8   One Market, Spear Street Tower
    San Francisco, CA 94105-1596
9   Tel: +1.415.442.1000
    Fax: +1.415.442.1001
10  brian.berry@morganlewis.com
    miranda.rowley@morganlewis.com
11
    Attorneys for Defendant
12  AMAZON.COM, INC. and
    AMAZON LOGISTICS, INC.
13

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16  ELSON MARCELO, PETR BOGOPOLSKIY,      Case No. 3:21-CV-07843-JD
    JASON SALES, ASHLEY ELLIS, DAVID
17  SIMARD, THIEN LUONG, RHONDA FELIX,    **DEFENDANTS' NOTICE OF MOTION
    STEPHANIE FRIEDMAN, WORKINEH          AND RENEWED MOTION TO COMPEL
18  WOLIE, ABDUL REHMAN, DAVID SAMRA,     ARBITRATION AND DISMISS, OR, IN
    MOHAMMED SHAIK, SALEH ALBADWI,        THE ALTERNATIVE, TO STAY,
19  TANESHA CALDWELL, STARR               DISMISS OR TRANSFER;
    CAMPBELL, and SERGIO GARNICA,         MEMORANDUM OF POINTS AND
20                                        AUTHORITIES IN SUPPORT THEREOF**
                Plaintiffs,
21                                        [*Proposed Order, Declaration of Sarah
         v.                               Magee, Declaration of Peter Nickerson,
22                                        Request for Judicial Notice filed concurrently
    AMAZON.COM, INC., and                 herewith*]
23  AMAZON LOGISTICS, INC.,
                                          Hearing to be Set by Court
24              Defendants.
                                          Honorable James Donato
25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

                                          AMAZON'S RENEWED MOTION TO
                                          COMPEL ARBITRATION

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants Amazon.com, Inc., and Amazon Logistics, Inc. (collectively "Defendants"), by and through their counsel, will and hereby do move the Court to compel arbitration and stay this action. Per the Court's August 2, 2022 order, the Court will set a hearing date if warranted. *See* ECF No. 40. Under the Federal Arbitration Act ("FAA") 9 U.S.C. §§ 1 *et seq.* and applicable state law, Plaintiffs agreed to and are therefore obligated to arbitrate their claims against Defendants on an individual basis. The Court should therefore compel arbitration and stay this litigation. Alternatively, this action should be transferred, stayed or dismissed under the first-to-file rule because it is duplicative of several previously-filed pending cases, all of which assert the identical theory—misclassification of California-based Amazon Flex delivery drivers. These pending cases include class and PAGA claims, brought on behalf of the putative aggrieved employees, that include Plaintiffs here. Thus, if this Court does not compel arbitration, at a minimum, this case should be stayed, transferred or dismissed under the first-to-file rule to avoid duplicative and wasteful litigation.

This motion will be based upon this Notice of Motion, the Memorandum of Points and Authorities in support thereof, Declaration of Sarah Magee and exhibits thereto, Declaration of Peter Nickerson, the Request for Judicial Notice and exhibits thereto, and on such evidence and argument as may be presented at the hearing on the motion, if set by the Court.

Dated: August 18, 2022            MORGAN, LEWIS & BOCKIUS LLP

By      */s/ Brian D. Fahy*
          Max Fischer
          Brian D. Berry
          Brian D. Fahy
          Miranda M. Rowley

          Attorneys for Defendants
          AMAZON.COM INC and
          AMAZON LOGISTICS, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

1

**TABLE OF CONTENTS**

2

**Page**

3

4   I.     INTRODUCTION ...................................................................................................II

    II.    FACTUAL BACKGROUND ................................................................................. 2

5          A.     The Amazon Flex Program and Terms of Service.................................... 2

6          B.     Plaintiffs' Claims. ................................................................................... 4

7   III.   ARGUMENT ......................................................................................................... 5

           A.     The Court Should Compel Arbitration...................................................... 5

8                 1.     Plaintiffs agreed to arbitrate these disputes................................ 5

9                 2.     Plaintiffs' agreements to arbitrate are enforceable..................... 6

10                       a.     The FAA requires enforcing Plaintiffs' agreements. ....... 6

11                              (1)    Plaintiffs are in the class of local delivery drivers. ............ 7

                                (2)    Local delivery drivers play no direct or active role in
12                                     transporting goods across borders. ................................ 8

13                              (3)    Plaintiffs cannot use Rittmann to escape the FAA. .......... 10

                         b.     State law requires enforcing Plaintiffs' agreements..................... 12
14
                                (1)    Delaware Law ................................................................ 12
15
                                (2)    California Law ............................................................... 14
           B.     The First-to-File Rule Requires Transfer, Dismissal, or Stay............................ 14
16
    IV.    CONCLUSION .................................................................................................... 15

17

18

19

20

21

22

23

24

25

26

27

28

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abram v. C.R. Eng., Inc.*,
No. 20-cv-764, 2020 WL 5077373 (C.D. Cal. June 23, 2020) .................................... 13

*Atwood v. Rent-A-Ctr. E., Inc.*,
No. 15-cv-1023, 2016 WL 2766656 (S.D. Ill. May 13, 2016)................................... 14

*Bean v. ES Partners, Inc.*,
533 F. Supp. 3d 1226 (S.D. Fla. 2021) ....................................................... 9

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015)................................................................ 6

*Capriole v. Uber Techs., Inc.*,
7 F.4th 854 (9th Cir. 2021)................................................................. 11

*Carder v. Carl M. Freeman Cmtys., LLC*,
Civ. No. 3319-VCP, 2009 WL 106510 (Del. Ch. Jan. 5, 2009) ....................... 6, 13

*Carmona v. Domino's Pizza, LLC*,
21 F.4th 627 (9th Cir. 2021)............................................................... 11

*Chappel v. Lab. Corp. of Am.*,
232 F.3d 719 (9th Cir. 2000)............................................................... 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000)............................................................... 5

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)........................................................................ 6

*Diaz v. Mich. Logistics Inc.*,
167 F. Supp. 3d 375 (E.D.N.Y. 2016) ...................................................... 12

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..................................................... 5

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)..................................................................... 5, 10

*Gardensensor, Inc. v. Stanley Black & Decker, Inc.*,
No. 12-cv-3922, 2012 WL 12925714 (N.D. Cal. Oct. 25, 2012) ........................... 13

*Graham v. State Farm Mut. Auto. Ins. Co.*,
565 A.2d 908 (Del. 1989) ................................................................. 13

*In re Grice*,
    974 F.3d 950 (9th Cir. 2020) .................................................................................. 11

*Hoyt v. Amazon.com, Inc.*,
    No. 19-CV-00218-JSC, 2019 WL 1411222 (N.D. Cal. Mar. 28, 2019) ................................. 15

*Kauffman v. U-Haul Int'l, Inc.*,
    No. 16-cv-4580, 2018 WL 4094959 ......................................................................... 14

*Keller v. Amazon.com, Inc.*,
    No. 17-CV-02219-RS, 2019 WL 13113043 (N.D. Cal. Oct. 23, 2019) ................................. 15

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
    313 U.S. 487 (1941) ........................................................................................... 14

*Maldonado v. Sys. Servs. of Am., Inc.*,
    No. 09-cv-542, 2009 WL 10675793 (C.D. Cal. June 18, 2009) .................................... 13, 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ............................................................................................. 5

*O'Shea v. Maplebear Inc.*,
    508 F. Supp. 3d 279 (N.D. Ill. 2020) ......................................................................... 9

*Ortiz v. Walmart, Inc.*,
    No. 20-CV-05052, 2020 WL 5835323 (C.D. Cal. Sept. 18, 2020) ...................................... 14

*Osborn ex rel. Osborn v. Kemp*,
    991 A.2d 1153 (Del. 2010) ...................................................................................... 5

*Palcko v. Airborne Express, Inc.*,
    372 F.3d 588 (3d Cir. 2004) .................................................................................. 12

*Parker v. New Prime, Inc.*,
    No. 20-cv-3298, 2020 WL 6143596 (C.D. Cal. June 9, 2020) .......................................... 13

*Puentes v. Amazon.com Servs., LLC*,
    No. 21-CV-00414-FLA, 2021 WL 5984867 (C.D. Cal. Sept. 30, 2021) ............................... 15

*Ratajesak v. New Prime, Inc.*,
    No. 18-cv-9396, 2019 WL 1771659 (C.D. Cal. Mar. 20, 2019) ........................................ 13

*Rittmann v. Amazon.com, Inc.*,
    971 F.3d 904 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021) .............................. *passim*

*Rodriguez v. Am. Techs., Inc.*,
    136 Cal. App. 4th 1110 (2006) .................................................................................. 6

*Ruiz v. Sysco Food Servs.*,
    122 Cal. App. 4th 520 (2004) ................................................................................. 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

*SBC Interactive, Inc. v. Corp. Media Partners*,
   714 A.2d 758 (Del. 1999) ......................................................................... 13

*Southwest Airlines Co. v. Saxon*,
   142 S. Ct. 1783 (2022) ................................................................... *passim*

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*,
   14 Cal. App. 4th 637 (1993) .................................................................... 14

*Vandenberg v. Superior Court*,
   982 P.2d 229 (Cal. 1999) ......................................................................... 14

*Vargas v. Delivery Outsourcing, LLC*,
   No. 15-cv-3408, 2016 WL 946112 (N.D. Cal. Mar. 14, 2016) .................. 6

*Wallace v. Grubhub Holdings*,
   970 F.3d 798 (7th Cir. 2020) ..................................................................... 9

*Webber v. Uber Techs., Inc.*,
   No. 18-cv-2941, 2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) ............... 5

**Statutes**

9 U.S.C. § 1 ................................................................................ 1, 6, 11, 12

9 U.S.C. § 2 ...................................................................................................... 6

9 U.S.C. §§ 3-4 ............................................................................................... 6

Cal. Civ. Code § 1550 ..................................................................................... 5

Cal. Civ. Proc. Code § 1281 ......................................................................... 14

California Arbitration Act ............................................................................. 14

Del. Code tit. 10, § 5701 ............................................................................... 13

Del. Code tit. 10, §§ 5701-5725 .................................................................. 13

Delaware Uniform Arbitration Act ............................................................... 13

Fair Labor Standards Act ............................................................................... 4

Federal Arbitration Act ................................................................................... 1

Uniform Arbitration Act ............................................................................... 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

**Other Authorities**

AM. ARB. ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION
    PROCEDURES R-7 (2016),
      https://adr.org/sites/default/files/Commercial%20Rules.pdf ................................................... 4

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

1    I.    **INTRODUCTION**

2         Plaintiffs agreed to arbitrate when they signed up to make local deliveries with the Amazon

3    Flex program. Yet now they seek to evade their agreements and litigate claims that Defendants

4    (collectively, "Amazon") violated state and federal wage and hour laws. The Court should compel

5    Plaintiffs to pursue their claims in arbitration as they agreed to do.

6         Plaintiffs may argue that their agreements are unenforceable because of the Federal Arbi-

7    tration Act ("FAA") exemption for classes of workers engaged in foreign or interstate commerce.

8    *See* 9 U.S.C. § 1. That is wrong. Under *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1788-89

9    (2022), the exemption's scope depends on whether the class of workers are "directly involved in

10   transporting goods across state or international borders," not whether they work for a business en-

11   gaging in interstate transportation. Plaintiffs' work was that of local delivery drivers: picking up

12   customers' orders and delivering them within their local areas in their own cars. They were far

13   removed from any direct role in cross-border transportation and are not exempt from the FAA.

14        To be sure, in *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), *cert. denied*,

15   141 S. Ct. 1374 (2021), the Ninth Circuit found Amazon Flex delivery drivers exempt from the

16   FAA. But that analysis conflicts with the *Saxon*'s more recent instructions and the record here. In

17   recognizing an exempt class of delivery drivers who supposedly perform the "last leg" of interstate

18   transportation routes, *Rittmann* improperly relied on the fact that Amazon, as a business, engages

19   in interstate commerce and transports goods across state lines. That is a true fact about Amazon,

20   but *Saxon* directs courts to focus on the activities of the class of *workers*—here, using personal

21   vehicles to make purely local deliveries—rather than the interstate nature of the *business* for which

22   they work. And even if drivers performing the "last leg" of interstate transportation routes were, at

23   least theoretically, an appropriate class of workers under the FAA, the evidence shows that Amazon

24   Flex drivers in Plaintiffs' circumstances deliver goods stocked within California approximately

25   90% of the time. So even under *Rittmann*, California Flex drivers are not exempt.

26        Regardless of whether the FAA governs, moreover, Plaintiffs' arbitration agreements are

27   enforceable under state law. Ten Plaintiffs are bound by agreements that were not before the Ninth

28   Circuit in *Rittmann*, which select Delaware law to govern arbitration if the FAA cannot apply. And

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1                                           AMAZON'S RENEWED MOTION TO
                                            COMPEL ARBITRATION

1  for the other six Plaintiffs, California law governs their agreements and also requires arbitration.

2      If this Court does not compel arbitration, it should dismiss, stay, or transfer under the first-

3  to-file rule because of this case's near-complete overlap with *Rittmann* and other earlier-filed ac-

4  tions in the Western District of Washington. Because of *Rittmann*, many district courts in the Ninth

5  Circuit have transferred other recent cases alleging misclassification of California Amazon Flex

6  drivers to that court. As they recognized, there is no reason to let plaintiffs waste judicial and party

7  resources by concurrently pursuing duplicative relief in a second court.

8  **II.    FACTUAL BACKGROUND**

9      **A.    The Amazon Flex Program and Terms of Service.**

10     Amazon.com, Inc. and affiliates sell products through different channels, including its web-

11  site, mobile applications, and retail locations like Whole Foods Market. *See* Declaration of Sarah

12  Magee ("Magee Decl."), ¶¶ 5-6, 13-14. Amazon Logistics, Inc. contracts with individual independ-

13  ent contractor "Delivery Partners" like Plaintiffs through a smartphone application-based program

14  called Amazon Flex, and these Delivery Partners use their personal vehicles to make local deliver-

15  ies of groceries, food, and other goods to Amazon's customers. *Id.* ¶¶ 7-8, 12-19. To sign up, pro-

16  spective Delivery Partners must download the Amazon Flex app, create an account, and accept the

17  Amazon Flex Independent Contractor Terms of Service ("TOS"). *Id.* ¶¶ 4, 20-26.

18     Four versions of the TOS are relevant here, although the first two, which governed the Am-

19  azon Flex program between September 2016 and October 2019, have no material differences and

20  are collectively referred to, for simplicity, as "First TOS." *Id.* ¶ 23 & Exs. A-B. All sixteen Plaintiffs

21  originally signed up to make Amazon Flex deliveries between September 27, 2016 and June 12,

22  2019 and therefore accepted the First TOS. *Id.* ¶¶ 22-23, 26-28, 31-46. Plaintiffs clicked a button

23  stating that they agreed to and accepted the First TOS. *Id.* ¶ 28. Then they saw a new screen and

24  clicked a button stating that they agreed to and accepted an agreement to arbitrate. *Id.* ¶ 29. The

25  First TOS gave Plaintiffs 14 days to opt out of arbitration by sending a simple email to an Amazon

26  email address, but they did not do so. *See id.* ¶¶ 30-46; First TOS § 11(k).

27  / / /

28  / / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

The First TOS also contained a modifications provision:

> Amazon may modify this Agreement . . . at any time by providing notice to you through the Amazon Flex app or otherwise providing notice to you. You are responsible for reviewing this Agreement regularly to stay informed of any modifications. If you continue to perform the Services or access Licensed Materials (including accessing the Amazon Flex app) after the effective date of any modification to this Agreement, you agree to be bound by such modifications. . . .

First TOS § 13. The First TOS explained that Amazon would communicate by email and other channels, and Plaintiffs "consent[ed] to Amazon communicating with [them] concerning the Program via any or all of these means." First TOS § 14.

The next relevant version, the "Second TOS," began to govern the Amazon Flex program in October 2019. Magee Decl. ¶ 24 & Ex. C. At that point, Amazon sent an email to the email addresses that existing Amazon Flex account holders, including Plaintiffs, had agreed to keep current for receiving communications from Amazon. *Id.* ¶ 48; First TOS § 14. This email alerted Plaintiffs about the TOS update, stating, "We're emailing you to let you know that we recently updated our Amazon Flex Terms of Service. By continuing to use the Amazon Flex app, you accept the Terms of Service, as updated." Magee Decl., Ex. E. After receiving this email, ten of the sixteen Plaintiffs—Albadwi, Bogopoliskiy, Caldwell, Campbell, Garnica, Luong, Rehman, Samra, Simard, and Wolie—scheduled and/or completed deliveries. *Id.* ¶¶ 49-58.

The final version, the "Third TOS," took effect in 2021. *Id.* ¶ 25 & Ex. D. California drivers with active Amazon Flex accounts received a notification in the Amazon Flex app that they had to read and accept the new agreement to continue performing deliveries. *Id.* ¶ 59. Much like the initial signup process, they saw the complete agreement and after scrolling through it had to click a button saying that they agreed to and accepted the terms. *Id.* ¶ 60. Three of the sixteen Plaintiffs—Albadwi, Bogopolskiy, and Rehman—accepted the Third TOS through this process. *Id.* ¶¶ 61-63.

In all these TOS versions, Section 11(a) set forth a mutual agreement between the contracting parties to arbitrate "any dispute or claim, whether based on contract, common law, or statute, arising out of or relating in any way to this Agreement, including termination of this Agreement, to your participation in the Program[,] or to your performance of Services." First TOS § 11(a); Second TOS § 11(a); Third TOS § 11(a) (capitalization omitted).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

The First TOS differs from the Second and Third TOS in their "Governing Law" provisions, Section 12. The First TOS generally chooses Washington law, "except for Section 11 . . . , which is governed by the [FAA] and applicable federal law." First TOS § 12. The Second and Third TOS generally choose Delaware law and make clear that Delaware law governs the arbitration provision in Section 11 if the FAA is held inapplicable. Second TOS § 12; Third TOS § 12.

Unlike the First TOS, the Second and Third TOS also delegate disputes over arbitrability to the arbitrator. They provide for arbitration under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), which empower the arbitrator to decide questions of arbitrability. Second TOS § 11(k); Third TOS § 11(i); *see* AM. ARB. ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R-7, at 13 (2016), https://adr.org/sites/default/files/Commercial%20Rules.pdf. In addition, they explain that while courts will resolve disputes about the validity and enforceability of the Second and Third TOS as a whole and whether the agreements are exempt from the FAA, the "arbitrator must resolve all other disputes, including the arbitrability of claims" under Section 11(a). Second TOS § 11(*l*); Third TOS § 11(j).

### B.    Plaintiffs' Claims.

Plaintiffs assert violations of federal and state laws on the theory that Amazon misclassified them as independent contractors. Dkt. #1 ("Compl."), ¶¶ 27-28, 38-39. They seek relief under the federal Fair Labor Standards Act ("FLSA") and assorted provisions of the California Labor Code and Industrial Welfare Commission's Wage Orders. Compl. ¶¶ 61-119.

The same basic theory and claims are before the Western District of Washington in several earlier-filed putative class actions. The first began in 2016. *See* First Amended Complaint, *Rittmann v. Amazon.com, Inc.*, No. C16-1554-JCC (W.D. Wash. Dec. 1, 2016), ECF No. 33; Request for Judicial Notice ("RJN"), Ex. A. *Rittmann*'s operative complaint alleges that Amazon Flex drivers' misclassification has led to violations of the California Labor Code, the Fair Labor Standards Act, and other laws, and the *Rittmann* plaintiffs seek to represent a class of "all delivery drivers who have contracted directly with Amazon to provide delivery services in California between three years since they brought this complaint and the date of final judgment in this matter." *See* Third Amended Complaint ¶ 62, *Rittmann* (Dec. 20, 2021), ECF No. 188; RJN, Ex. B.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

III.    **ARGUMENT**

A.    **The Court Should Compel Arbitration.**

1.    **Plaintiffs agreed to arbitrate these disputes.**

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In doing so, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under any potentially applicable set of state-law principles—including California and Delaware—Plaintiffs agreed to arbitrate any claim or dispute related to Amazon Flex through offer, acceptance, consideration, and language showing an intent to arbitrate. *See, e.g., Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) (articulating the basic requirements for contract formation); CAL. CIV. CODE § 1550 (same).

All sixteen Plaintiffs agreed to the First TOS between September 2016 and June 2019: they affirmatively clicked their assent to the agreement and arbitration provision in signing up. *See supra* p. 2. Ten Plaintiffs, moreover, agreed to the Second TOS by continuing performing deliveries in October 2019 after receiving notice of the updated terms. *See supra* p. 3. Individualized email notice of a terms-of-service update, followed by continued use of the service, is enough to bind plaintiffs to the updated terms. *See, e.g., In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (Donato, J.); *Webber v. Uber Techs., Inc.*, No. 18-cv-2941, 2018 WL 10151934, at *4 (C.D. Cal. Sept. 5, 2018). These ten Plaintiffs received email notice of the TOS update and continued to schedule and perform deliveries. Magee Decl. ¶¶ 49-58; *id.*, Ex. E. By continuing to use the Flex App after receiving the email, these ten Plaintiffs agreed to be bound by the Second TOS. And three of those ten—Albadwi, Bogopolskiy, and Rehman—later agreed to the Third TOS by clicking acceptance within the Amazon Flex app. *See supra* p. 3.

The TOS arbitration provisions broadly cover all claims or disputes that arise out of or relate in any way to Plaintiffs' agreement, participation in the Amazon Flex program, or performance of services. First TOS § 11(a); Second TOS § 11(a); Third TOS § 11(a). That readily covers alleged

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

wage and hour violations through the Amazon Flex program. Compl. ¶ 39; *see also* Compl. ¶ 28.

The ten Plaintiffs who agreed to the Second and Third TOS also agreed to arbitrate disputes about arbitrability. Those agreements' adoption of the AAA Commercial Arbitration Rules is a clear and unmistakable delegation of arbitrability disputes to the arbitrator. Second TOS § 11(k); Third TOS § 11(i); *see, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Carder v. Carl M. Freeman Cmtys., LLC*, Civ. No. 3319-VCP, 2009 WL 106510, at *6 (Del. Ch. Jan. 5, 2009); *Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1123 (2006). Other language in the agreements likewise requires the arbitrator to resolve disputes over "the arbitrability of claims" under Section 11(a). Second TOS § 11(*l*); Third TOS § 11(j). So any arbitrability challenge within the scope of this delegation would be for the arbitrator, not this Court, to decide.

### 2.      Plaintiffs' agreements to arbitrate are enforceable.

#### a.      The FAA requires enforcing Plaintiffs' agreements.

The contracting parties selected the FAA to govern their arbitration agreements. *See* First TOS § 12; Second TOS § 12; Third TOS § 12. When the FAA applies, courts must compel arbitration according to the agreement's terms and stay (or dismiss) the litigation. 9 U.S.C. §§ 3-4; *see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The FAA's basic coverage extends to any arbitration agreement in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Here, there is no question that Amazon Flex transactions involve interstate commerce and that the TOS triggers the FAA's basic coverage.

The only question is whether Plaintiffs' agreements implicate the FAA's limited exemption for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. In *Saxon*, the Supreme Court prescribed a two-step inquiry for deciding whether a plaintiff falls within this exemption. A court should "begin by defining the relevant 'class of workers' to which [the plaintiff] belongs," then "determine whether that class of workers is 'engaged in foreign or interstate commerce.'" *Saxon*, 142 S. Ct. at 1788.

Plaintiffs bear "the burden of demonstrating the exemption" applies to them. *Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-3408, 2016 WL 946112, at *3 (N.D. Cal. Mar. 14, 2016). They cannot carry that burden. Under *Saxon*'s two-step framework, Plaintiffs belong to the class of local

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

delivery drivers, and that class of workers is not exempt from the FAA because they are not directly and actively involved in transporting goods across state lines.

### (1)    Plaintiffs are in the class of local delivery drivers.

*Saxon* provides the controlling principles for defining Plaintiffs' class of workers. The plaintiff there was a Southwest Airlines "ramp supervisor" who frequently loaded and unload airplanes making interstate trips. 142 S. Ct. at 1787-88. She asked the Supreme Court to define the relevant class of workers based on the business of her employer: "airline employees." *Id.* at 1788 (citation omitted). But Southwest argued that the class of workers should be defined "based on *their* conduct, not their *employer's*." *Id.* (citation omitted). The Supreme Court rejected the plaintiff's approach and adopted Southwest's. The statutory language centers on "workers" and thus direct attention to the work performed rather than the entity paying for the work. *Id.* The statute also asks how those workers are "engaged," similarly emphasizing "the actual work that the members of the class, as a whole, typically carry out." *Id.* The *Saxon* plaintiff belonged to "a member of a 'class of workers' based on what she does at Southwest, not what Southwest does generally." *Id.*

These principles show that the relevant class of workers here is *local delivery drivers*—workers who use ordinary vehicles, like their own cars, to deliver customer orders within a local area. Plaintiffs signed up for a program that allowed them to make local deliveries of goods, groceries, or food items in their cars for Amazon's customers in various California locales. Magee Decl. ¶¶ 12-21. Around two-thirds of all Amazon Flex delivery blocks in California are "GSF" blocks to deliver locally stocked items like groceries or same-day merchandise orders—not the "brown box" packages of goods warehoused in Amazon "fulfillment centers," which store items customers may purchase. Nickerson Decl. ¶¶ 4-6; Magee Decl. ¶¶ 13-14. And regardless of the type of delivery, the basic work of picking up orders and taking them to nearby customers does not meaningfully change depending on whether the driver picks up a brown box package at a local Amazon delivery station or a bag of groceries at Whole Foods. *See* Magee Decl. ¶¶ 12-19.

Indeed, even when an Amazon Flex driver picks up a brown box package that may have traveled across state lines at some point, the driver's own transportation work is wholly local. Amazon Flex drivers do not interact with the interstate transportation workers or their interstate

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

vehicles. *Id.* ¶ 18. Even for brown box packages, there are several layers of workers and vehicles separating the Amazon Flex driver and any interstate transportation work. Nearly three-quarters of brown box orders in California, for example, are fulfilled from fulfillment centers in California, and the ordered items have been sitting in those California fulfillment centers an average of over 30 days before a customer orders them. *Id.* ¶ 17. Once a customer purchases an item, warehouse workers pick the item from the shelves, move them through the facility using conveyor belts and other means, and package them for the customer. *Id.* ¶ 15. These brown box packages then go to other workers at the fulfillment center, who load them onto trucks usually destined for an intrastate trip to a California sort center. *Id.* ¶¶ 15, 17. At the sort center, new workers unload the trucks and organize and bundle packages by zip code. *Id.* Sort center workers load these organized packages onto other trucks, which other workers (not Amazon Flex drivers) drive to California delivery stations. *Id.* At the delivery station, various workers there (not Amazon Flex drivers) unload these trucks, reorganize and rebundle packages for specific batches of local deliveries, and place the batched items onto a cart or into bags. *Id.* ¶ 16. Only then do Amazon Flex drivers pick up these batched brown box packages, transfer them from the shelves or bags into the trunk or backseat of the driver's car, and head out for a local delivery route. *Id.*

Plaintiffs thus belong to the class of local delivery drivers. Whether an Amazon Flex driver delivers locally stocked items, like Whole Foods groceries or same-day merchandise, or brown box packages of items from Amazon fulfillment centers, the Amazon Flex work is fundamentally the same and far removed from interstate transportation.

### (2)    Local delivery drivers play no direct or active role in transporting goods across borders.

*Saxon* also shows that local delivery drivers do not engage in foreign or interstate commerce under the FAA's exemption. It held that the exemption captures "any class of workers *directly involved* in transporting goods *across state or international borders*." 142 S. Ct. at 1789 (emphasis added); *see also id.* at 1790 (exempt workers "must at least play a *direct and 'necessary role* in the free flow of goods' *across borders*" and "be *actively 'engaged* in transportation' of those goods *across borders* via the channels of foreign or interstate commerce" (emphasis added)).

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

Under this test, Plaintiffs' class of local delivery drivers is not exempt. As noted, around two-thirds of all Amazon Flex delivery blocks in California are to deliver locally stocked items, such as groceries from a Whole Foods store. Nickerson Decl. ¶¶ 5-6; Magee Decl. ¶¶13-14. Even under *Rittmann*'s pre-*Saxon* analysis, deliveries of groceries, restaurant orders, and locally stocked items do not qualify as interstate transportation. *Rittmann* approved cases holding that "local food delivery drivers are not 'engaged in the interstate transport of goods.'" 971 F.3d at 916 (citation omitted); *see Wallace v. Grubhub Holdings*, 970 F.3d 798, 803 (7th Cir. 2020). The same conclusion follows for delivery drivers who go to other nearby locations—like grocery stores, retail stores, or warehouses for same-day orders—to pick up and deliver goods stocked in the same local area as the customer who orders them. *See, e.g.*, *Bean v. ES Partners, Inc.*, 533 F. Supp. 3d 1226, 1236 (S.D. Fla. 2021) (explaining that "same day" delivery drivers who "pick up from local warehouses, merchants, or pharmacies, and then deliver to customers within [a state]" are not exempt under *Rittmann*'s test); *O'Shea v. Maplebear Inc.*, 508 F. Supp. 3d 279, 287 (N.D. Ill. 2020) ("[D]rivers who deliver food purchased over the internet from a grocery store differ in no material way from drivers who pick up food purchased over the web from a restaurant[.]"). These goods remain in one local area from the time the customer places the order to the time the business fulfills it.

The same is true for a large majority of the brown box orders that make up the other third of California delivery blocks. Magee Decl. ¶ 17. Again, nearly three-quarters of these orders take place *wholly within California*: from a California fulfillment center, to a California sort center, to a California delivery station, to a California customer. *Id.* And 99% of California brown box orders have *at least* one discrete phase of transit wholly within California—between a California sort center and a California delivery station, with intervening loading and unloading and handling conducted by other workers—before the Amazon Flex driver even touches the goods. *Id.* So even with these brown box deliveries, there is no plausible argument that the Amazon Flex drivers are directly involved in goods' transportation across borders. Multiple other classes of workers stand between that cross-border transit and the local Amazon Flex drivers' own work.

*Saxon*'s airplane cargo loaders, in contrast, are "directly involved in transporting goods across state or international borders" because loading and unloading interstate vehicles is a direct

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

and integral part of the goods' interstate travel. 142 S. Ct. at 1789. But the Supreme Court "recognize[d]" that the exemption's application to so-called "last leg" drivers is not "so plain." *Id.* at 1789 n.2. While noting that *Rittmann* had held such drivers to be exempt, the Supreme Court characterized them as "carr[ying] out duties further removed from the channels of interstate commerce or the actual crossing of borders" than airplane cargo loaders. *Id.*

The Supreme Court did not need to resolve the status of local delivery drivers to decide *Saxon*, but on this record, applying *Saxon*'s test is straightforward. As a group, the local drivers here lack any role transporting goods across international or state borders. By the time that they load a group of customers' orders into the trunk or backseat of their cars, whatever cross-border transportation may have occurred has happened with zero involvement by the Amazon Flex drivers. *See* Magee Decl. ¶¶ 10-19. Other workers have loaded airplanes and/or tractor-trailers, piloted or driven them, unloaded them, and sorted and otherwise handled them at California sort centers and California delivery stations. *Id.* ¶¶ 15-17. Only after those workers have performed these discrete functions do the Amazon Flex drivers pick up a batch of items, load them items into their cars, and take them short distances to local customers. *Id.* ¶ 16. Amazon Flex drivers like Plaintiffs are several steps removed from—not "directly involved in"—"transporting goods across state or international borders." *Saxon*, 142 S. Ct. at 1789.

**(3)   Plaintiffs cannot use *Rittmann* to escape the FAA.**

Plaintiffs may rely on *Rittmann* to argue otherwise. But for two key reasons, *Rittmann* does not control. *First*, the record here differs from what was before the *Rittmann* court, and shows the overwhelmingly local nature of Plaintiffs' work. In *Rittmann*, there was "no suggestion that the goods [Amazon Flex] workers deliver originate in the same state where deliveries take place, such that delivery providers are making purely intrastate deliveries." 971 F.3d at 915. Here, though, the record proves that the overwhelming proportion of Amazon Flex deliveries performed by Plaintiffs and their fellow Amazon Flex drivers in California *do* involve items that are already in California at the time customers purchase them. Roughly two-thirds of all Amazon Flex delivery blocks in California are for locally stocked items like groceries or same-day merchandise. Nickerson Decl. ¶¶ 5-6; Magee Decl. ¶¶ 13-14. And of the remaining third (brown box orders that originate at an

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

1   Amazon fulfillment center), nearly three quarters of the orders start their movement to the Califor-

2   nia customer at a California fulfillment center. Magee Decl. ¶¶ 15-17. Together, these statistics

3   show that only about one-quarter of one-third—one-twelfth, in other words, or *under 10%*—of the

4   Amazon Flex delivery work in California could possibly qualify as interstate "last leg" deliveries

5   in *Rittmann*'s sense of the term. (And even then, nearly 99% of brown box deliveries come to rest

6   in California at a sort center, with intervening unloading and handling by other workers, followed

7   by other non-Flex workers' loading and intrastate transportation from the California sort center to

8   the California delivery station, followed by more unloading and handling by other workers before

9   the Amazon Flex driver first touches them.) Even under *Rittmann*, Plaintiffs' class of workers do

10  not "typically" or "frequently" perform interstate deliveries. *Compare Saxon*, 142 S. Ct. at 1788-

11  89 (plaintiff frequently engaged in loading and unloading interstate airplanes "for up to three shifts

12  per week"), *with Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 864 (9th Cir. 2021) (work making up

13  just over 10% of the workers' activities "only occasionally implicate[d] interstate commerce").

14        Second, *Rittmann*'s conclusion is legally unsound because it violates the Supreme Court's

15  more recent instructions in *Saxon*. *Rittmann* deliberately defined the class of workers in terms of

16  the activities of the business for which the workers worked, rejecting Amazon's argument that the

17  exemption's application depends on the activities of the relevant *workers* and not the *business*.

18  *Rittmann*, 971 F.3d at 917-18. Because of *Rittmann*, the Ninth Circuit has since characterized "the

19  interstate nature of an employer's business as the *critical factor* for determining whether a worker

20  qualifies for the § 1 exemption." *In re Grice*, 974 F.3d 950, 957 (9th Cir. 2020) (emphasis added);

21  *see also Capriole*, 7 F.4th at 861, 866; *Carmona v. Domino's Pizza, LLC*, 21 F.4th 627, 630 (9th

22  Cir. 2021). But *Saxon* instructs courts to apply the exemption based on the underlying work of the

23  class of workers, not the company for which they do that work.  *See Saxon*, 142 S. Ct. at 1788-89.

24        *Rittmann* also violates *Saxon* by holding that delivery drivers need *not* be directly or actively

25  involved in transportation across borders: they can "fall within the exemption, even if they do not

26  cross state lines to make their deliveries." 971 F.3d at 919. The goods they transport need only be

27  in the "stream" or "flow of commerce." *Id.* at 913-15. The Supreme Court rejected this test for the

28  FAA, and not by accident. The Supreme Court was fully aware of the *Rittmann* decision, which it

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

1   cited, and has applied a flow-of-commerce test for other statutes. *Compare Saxon*, 142 S. Ct. at

2   1789 n.2, 1792, *with Rittmann*, 971 F.3d at 913-14. Yet rather than embrace flow-of-commerce as

3   the test here, *Saxon* determined that the FAA's unique language requires the workers' direct and

4   active role in cross-border transit. 142 S. Ct. at 1789-90. Its only discussion of the "flow of interstate

5   commerce" was to *reject* Southwest's reliance on that test. *Id.* at 1792. The Supreme Court's rejec-

6   tion of a flow-of-commerce test for the FAA shows that *Rittmann* erred in using that standard to

7   find Amazon Flex drivers exempt.

8               **b.        State law requires enforcing Plaintiffs' agreements.**

9           Even if Plaintiffs' arbitration agreements were exempt from the FAA, state law requires

10  their enforcement. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000) (even if it

11  is questionable whether the FAA applies, a plaintiff who agreed to an arbitration clause "would still

12  be required under the law of contract to arbitrate in accordance with the clause"). In fact, the Court

13  can bypass any uncertainty over the FAA's applicability and should do so if resolving the uncer-

14  tainty would require discovery. *Harper*, 12 F.4th at 295-96 ("[S]tate law arbitration questions must

15  be resolved before turning to questions of fact and discovery."); *Diaz v. Mich. Logistics Inc.*, 167

16  F. Supp. 3d 375, 380-81 (E.D.N.Y. 2016) (bypassing dispute over the FAA exemption because

17  arbitration agreement was enforceable under state law). Here, the ten Plaintiffs who agreed to the

18  Second or Third TOS are clearly required to arbitrate under Delaware law. Even apart from those

19  contracts' choice of Delaware law, moreover, all Plaintiffs—whether they agreed to the First, Sec-

20  ond, or Third TOS—must arbitrate under California law.

21               **(1)        Delaware Law**

22          The Second and Third TOS specify that Delaware law governs arbitration under Section 11

23  in the FAA's absence: "[i]f, for any reason, the [FAA] is held by a court of competent jurisdiction

24  not to apply to Section 11 of this Agreement, the law of the state of Delaware will govern Section

25  11." Second TOS § 12; *accord* Third TOS § 12. These updated agreements, which were not at issue

26  in *Rittmann*, clearly select a state's arbitration law as a possible fallback to the FAA, and that state

27  law requires enforcing the arbitration agreements even if the FAA exemption applies. *See, e.g.,*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

*Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596 (3d Cir. 2004) (enforcing FAA-exempt agreement under Washington law because "the effect of Section 1 is merely to leave the arbitrability of disputes in the excluded categories as if the [FAA] had never been enacted" (citation omitted)); *Abram v. C.R. Eng., Inc.*, No. 20-cv-764, 2020 WL 5077373, at *7 (C.D. Cal. June 23, 2020) (reaffirming decision to compel arbitration under Utah law, despite district court ruling in *Rittmann* and the plaintiff's status as an exempt transportation worker, because the contract expressly chose Utah arbitration law as a fallback to the FAA).[1]

For the ten Plaintiffs who accepted the Second and/or Third TOS, the Court should enforce Plaintiffs' arbitration agreements through this choice of Delaware law. The Delaware Supreme Court has long stressed that "the public policy of [Delaware] favors the resolution of disputes through arbitration." *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911 (Del. 1989) (citation omitted). Reflecting that policy, Delaware "enacted a Uniform Arbitration Act" that is "similar to the [FAA]." *Id.* (citing DEL. CODE tit. 10, §§ 5701-5725). The Delaware Uniform Arbitration Act "provides that 'a written agreement to submit to arbitration any controversy existing at or arising after the effective date of the agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting DEL. CODE tit. 10, § 5701). And "[a]ny doubt as to arbitrability is to be resolved in favor of arbitration." *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1999). There is no basis under Delaware law not to enforce these ten Plaintiffs' arbitration agreements—including their agreements to arbitrate arbitrability disputes through the delegation provision. *See, e.g.*, *Carder*, 2009 WL 106510, at *8 (enforcing a delegation provision under Delaware law).

---

[1] Were Plaintiffs to challenge using the choice-of-law provision to compel arbitration, that challenge would be reserved for the arbitrator through Plaintiffs' agreements to arbitrate arbitrability. *See, e.g.*, *Parker v. New Prime, Inc.*, No. 20-cv-3298, 2020 WL 6143596, at *4 (C.D. Cal. June 9, 2020) (enforcing delegation provision and compelling arbitration under state law without resolving challenge to choice-of-law provision, even though the plaintiff was exempt from the FAA); *Ratajesak v. New Prime, Inc.*, No. 18-cv-9396, 2019 WL 1771659, at *4-6 (C.D. Cal. Mar. 20, 2019) (same); *supra* pp. 5-6. Even if the parties had not agreed to arbitrate this question, California conflict-of-laws principles would respect the parties' choice of Delaware law. *See, e.g.*, *Gardensensor, Inc. v. Stanley Black & Decker, Inc.*, No. 12-cv-3922, 2012 WL 12925714, at *3 (N.D. Cal. Oct. 25, 2012). California courts "respect choice-of-law provisions" if the chosen state "has a substantial relationship to the parties." *Id.* at *4. That condition is met because one of the parties is "incorporated in the state of Delaware." *Id.*; *see* Dkt. 1, ¶¶ 21-22.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

**(2)    California Law**

Plaintiffs also must arbitrate through the First TOS under California law. *See, e.g., Maldonado v. Sys. Servs. of Am., Inc.*, No. 09-cv-542, 2009 WL 10675793, at *2 (C.D. Cal. June 18, 2009) (compelling arbitration under California law because FAA exemption applied). Although the First TOS does not have a contingency choice of law, "an arbitration clause can be enforced under state law even in the absence of a state law contingency provision." *Kauffman v. U-Haul Int'l, Inc.*, No. 16-cv-4580, 2018 WL 4094959, at *5 (E.D. Pa. Aug. 28, 2018. "[T]he only question becomes what state's law applies to the contract to arbitrate." *Atwood v. Rent-A-Ctr. E., Inc.*, No. 15-cv-1023, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016).

Here, the applicable state law turns on the choice-of-law principles of California, where this Court sits. *See, e.g., Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). When there is no effective choice-of-law provision, California usually selects the law of the place of contracting, negotiation, or performance. *See, e.g., Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 646 (1993). That would point to California, where Plaintiffs resided and signed up to perform delivery services. *See* Magee Decl. ¶¶ 31-46.

Under the California Arbitration Act ("CAA"), "[a] written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." CAL. CIV. PROC. CODE § 1281. "Through this detailed statutory scheme, the Legislature has expressed a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *Vandenberg v. Superior Court*, 982 P.2d 229, 238 (Cal. 1999) (citation omited); *see Maldonado*, 2009 WL 10675793, at *2-3 (enforcing purportedly FAA-exempt contract under California law). Notably, California law does not require an arbitration agreement to "expressly refer to California law" to be enforceable under the CAA. *Ruiz v. Sysco Food Servs.*, 122 Cal. App. 4th 520, 533, 537-39 (2004) (bypassing dispute over the FAA and enforcing agreement through the CAA). For this reason, too, the Court should compel Plaintiffs to arbitrate and stay this litigation pending arbitration.

**B.    The First-to-File Rule Requires Transfer, Dismissal, or Stay.**

Alternatively, the Court should apply the first-to-file rule to transfer, dismiss, or stay this

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

AMAZON'S RENEWED MOTION TO
COMPEL ARBITRATION

action based on *Rittmann* and other earlier-filed actions now consolidated with it. The first-to-file rule allows district courts "to dismiss, stay, or transfer a case to avoid duplicative litigation and to conserve judicial resources." *Ortiz v. Walmart, Inc.*, No. 20-CV-05052, 2020 WL 5835323, at *2 (C.D. Cal. Sept. 18, 2020). Under this doctrine, district courts have unanimously transferred related actions to the Western District of Washington because of *Rittmann*. *See, e.g.*, *Puentes v. Amazon.com Servs., LLC*, No. 21-CV-00414-FLA, 2021 WL 5984867, at *3 (C.D. Cal. Sept. 30, 2021); *Keller v. Amazon.com, Inc.*, No. 17-CV-02219-RS, 2019 WL 13113043, at *2 (N.D. Cal. Oct. 23, 2019); *Hoyt v. Amazon.com, Inc.*, No. 19-CV-00218-JSC, 2019 WL 1411222, at *8 (N.D. Cal. Mar. 28, 2019); *cf.* Order to Consolidate at 1-2 & n.1, *Rittmann* (June 16, 2022), ECF No. 200; RJN, Ex. C. The Court has discretion to take up this first-to-file issue first, before addressing Amazon's motion for arbitration. *Puentes*, 2021 WL 5984867, at *2; *Keller*, 2019 WL 13113043, at *1.

The first-to-file rule clearly applies here. Plaintiffs are members of *Rittmann*'s putative class, the defendants are the same, and the disputed issues overlap significantly, including the core theory that Amazon Flex delivery partners are misclassified as independent contractors:

| Date Filed | Putative Class/Plaintiffs | Defendants | Claims |
|---|---|---|---|
| *Rittmann* C16-1554-JCC Oct. 4, 2016 | "[A]ll delivery drivers who have contracted directly with Amazon to provide delivery services in California" since October 4, 2013. | Amazon.com, Inc. Amazon Logistics, Inc. | • Reimbursement<br>• Minimum wage<br>• Meal and rest breaks<br>• Overtime<br>• Wage statements<br>• Untimely wages<br>• Paid sick leave |
| *Marcelo* Oct. 5, 2021 | Individual plaintiffs who signed up to perform Amazon Flex deliveries starting on September 27, 2016. | Amazon.com, Inc. Amazon Logistics, Inc. | • Reimbursement<br>• Minimum wage<br>• Meal and rest breaks<br>• Overtime<br>• Wage statements<br>• Untimely wages<br>• Unlawful deductions |

The Court should exercise its authority under the first-to-file rule to dismiss or stay or, like the courts in *Hoyt*, *Keller*, and *Puentes*, transfer this action to the Western District of Washington.

## IV.  CONCLUSION

For all these reasons, the Court should either compel arbitration and stay the litigation, or it should dismiss, stay, or transfer this action under the first-to-file rule.

1     Dated:  August 18, 2022                    MORGAN, LEWIS & BOCKIUS LLP

2

3                                          By      /s/ Brian D. Fahy
                                                Max Fischer
4                                               Brian D. Berry
                                                Brian D. Fahy
5                                               Miranda M. Rowley

6                                               Attorneys for Defendants
                                                AMAZON.COM INC and
7                                               AMAZON LOGISTICS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

16                        AMAZON'S RENEWED MOTION TO
                          COMPEL ARBITRATION