MORGAN, LEWIS & BOCKIUS LLP
Max Fischer, Bar No. 226003
Brian D. Fahy, Bar No. 266750
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: +1.213.612.2500
Fax: +1.213.612.2501
max.fischer@morganlewis.com
brian.fahy@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Brian D. Berry, Bar No. 229893
Miranda M. Rowley, Bar No. 328173
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: +1.415.442.1000
Fax: +1.415.442.1001
brian.berry@morganlewis.com
miranda.rowley@morganlewis.com

Attorneys for Defendant
AMAZON.COM, INC. and
AMAZON LOGISTICS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELSON MARCELO, PETR BOGOPOLSKIY, JASON SALES, ASHLEY ELLIS, DAVID SIMARD, THIEN LUONG, RHONDA FELIX, STEPHANIE FRIEDMAN, WORKINEH WOLIE, ABDUL REHMAN, DAVID SAMRA, MOHAMMED SHAIK, SALEH ALBADWI, TANESHA CALDWELL, STARR CAMPBELL, and SERGIO GARNICA,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., and AMAZON LOGISTICS, INC.,<br><br>Defendants. | Case No. 3:21-CV-07843-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, TO STAY, DISMISS OR TRANSFER**<br><br>Hearing to be Set by Court<br><br>Honorable James Donato |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................. 1
II. ARGUMENT .......................................................................................................................... 1
    A. The FAA requires arbitration. ................................................................................... 1
        1. *Lopez* confirms Amazon's interpretation of *Saxon*. .................................... 1
        2. Plaintiffs improperly constrict *Saxon* and expand *Rittmann*. ...................... 3
    B. State law requires arbitration. .................................................................................... 6
        1. Three Plaintiffs clearly must arbitrate under the Third TOS. ..................... 6
        2. Seven additional Plaintiffs must arbitrate under the Second TOS. ............. 7
        3. California law requires all Plaintiffs to arbitrate. ........................................ 8
    C. The first-to-file rule applies. .................................................................................... 10
III. CONCLUSION .................................................................................................................... 10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Capriole v. Uber Techs., Inc.*,
  7 F.4th 854 (9th Cir. 2021) .................................................................................................... 4

*Chan v. C&S Wholesale Grocers Inc.*,
  No. 13-cv-6357, 2013 WL 12306481 (C.D. Cal. Oct. 11, 2013) .......................................... 10

*Circuit City Stores, Inc. v. Ahmed*,
  283 F.3d 1198 (9th Cir. 2002) ............................................................................................... 9

*Collins v. Heritage Wine Cellars, Ltd.*,
  589 F.3d 895 (7th Cir. 2009) ................................................................................................. 5

*De Leon v. Pinnacle Prop. Mgmt. Servs., LLC*,
  72 Cal. App. 5th 476 (2021) ................................................................................................ 10

*Discover Bank v. Superior Ct.*,
  134 Cal. App. 4th 886 (2005) ................................................................................................ 7

*In re Facebook Biometric Info. Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ................................................................................. 7

*Faggiano v. CVS Pharmacy, Inc.*,
  283 F. Supp. 3d 33 (E.D.N.Y. 2017) ..................................................................................... 9

*Gardensensor, Inc. v. Stanley Black & Decker, Inc.*,
  No. 12-cv-3922, 2012 WL 12925714 (N.D. Cal. Oct. 25, 2012) ........................................... 7

*Garrido v. Air Liquide Industrial U.S. LP*,
  241 Cal. App. 4th 833 (2015) ............................................................................................ 8, 9

*Gentry v. Superior Court*,
  165 P.3d 556 (Cal. 2007) ....................................................................................................... 9

*Hughes Tool Co. v. Trans World Airlines, Inc.*,
  409 U.S. 363 (1973) ............................................................................................................... 5

*Immediato v. Postmates, Inc.*,
  No. 20-cv-12308, 2021 WL 828381 (D. Mass. Mar. 4, 2021) .............................................. 4

*Jackson v. Amazon.com, Inc.*,
  559 F. Supp. 3d 1132 (S.D. Cal. 2021) .............................................................................. 8, 9

*Jacobson v. Snap-on Tools Co.*,
  No. 15-cv-2141, 2015 WL 8293164 (N.D. Cal. Dec. 9, 2015) .............................................. 9

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

ii

AMAZON'S REPLY ISO MOTION TO
COMPEL ARBITRATION

*Lacour v. Marshalls of CA, LLC*,
　No. 20-cv-7641, 2021 WL 1700204 (N.D. Cal. Apr. 29, 2021) ............................................... 9

*Lopez v. Cintas Corp.*,
　47 F.4th 428 (5th Cir. 2022) ......................................................................................... *passim*

*Monex Deposit Co. v. Gilliam*,
　671 F. Supp. 2d 1137 (C.D. Cal. 2009) ............................................................................... 9

*Nedlloyd Lines B.V. v. Superior Court*,
　834 P.2d 1148 (Cal. 1992) ............................................................................................... 6, 7

*Parker v. New Prime, Inc.*,
　No. 20-cv-3298, 2020 WL 6143596 (C.D. Cal. June 9, 2020) ............................................. 6

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
　282 P.3d 1217 (Cal. 2012) ................................................................................................... 9

*Poublon v. C.H. Robinson Co.*,
　846 F.3d 1251 (9th Cir. 2017) ........................................................................................ 9, 10

*Prestige Transp. Inc. v. U.S. Dep't of Homeland Sec.*,
　No. 20-cv-1562, 2020 WL 6260019 (C.D. Cal. Sept. 9, 2020) .......................................... 10

*Ratajesak v. New Prime, Inc.*,
　No. 18-cv-9396, 2019 WL 1771659 (C.D. Cal. Mar. 20, 2019) .......................................... 6

*Rittmann v. Amazon.com, Inc.*,
　971 F.3d 904 (9th Cir. 2020) ........................................................................................ *passim*

*Romero v. Watkins & Shepard Trucking, Inc.*,
　No. 20-55768, 2021 WL 3675074 (9th Cir. Aug. 19, 2021) ............................................. 7, 9

*Sw. Airlines Co. v. Saxon*,
　142 S. Ct. 1783 (2022) .................................................................................................. *passim*

*Tura v. Med. Shoppe Int'l, Inc.*,
　No. 09-cv-7018, 2010 WL 11506428 (C.D. Cal. Mar. 3, 2010) .......................................... 9

*Waithaka v. Amazon.com, Inc.*,
　966 F.3d 10 (1st Cir. 2020) ............................................................................................... 2, 5

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
　967 F. Supp. 2d 1289 (N.D. Cal. 2013) ............................................................................. 10

*Webber v. Uber Techs., Inc.*,
　No. 18-cv-2941, 2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) .......................................... 8

*Williams v. Eaze Sols., Inc.*,
　417 F. Supp. 3d 1233 (N.D. Cal. 2019) ............................................................................... 6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

AMAZON'S REPLY ISO MOTION TO
COMPEL ARBITRATION

**Statutes**

9 U.S.C. § 1 ............................................................................................................................... 2, 5

California Arbitration Act ............................................................................................................. 8

Motor Carrier Act .......................................................................................................................... 5

**Other Authorities**

AM. ARB. ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION
   PROCEDURES, https://www.adr.org/sites/default/files/
   Commercial_Rules_Web.pdf ................................................................................................ 10

FED. R. CIV. P. 23 ........................................................................................................................ 10

RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) ............................................................... 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

AMAZON'S REPLY ISO MOTION TO
COMPEL ARBITRATION

## I. INTRODUCTION

Contrary to Plaintiffs' mischaracterization, *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022), fashioned a new test for the FAA exemption that conflicts with *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 915-19 (9th Cir. 2020). *Rittmann*'s analysis of so-called "last mile drivers" is untenable under *Saxon*, as the Fifth Circuit held just days after Amazon filed its Motion (Dkt. 41).

In *Lopez v. Cintas Corp.*, 47 F.4th 428, 431-33 (5th Cir. 2022), the Fifth Circuit applied *Saxon* to hold that a self-described "last-mile driver" was in a class of "local delivery drivers" and *not exempt* because such drivers lack "a 'direct and necessary role' in the transportation of goods across borders." Thus, Plaintiffs' insistence that *Saxon* has no bearing on last-mile delivery is refuted by the first on-point circuit-court decision, which Plaintiffs never even mention. As *Lopez* explains, the fact that the delivered items may have been "shipped from out of state" before the local drivers picked them up does not satisfy *Saxon*'s requirement that the *drivers* be "actively engaged in transportation of those goods across borders." *Id.* at 430, 433 (quoting *Saxon*, 142 S. Ct. at 1790). The Court should follow *Saxon* and *Lopez* to the same result.

But even if the FAA were inapplicable, Delaware and California law would still require Plaintiffs to arbitrate. Ten plaintiffs accepted new versions of the TOS that select Delaware law as a fallback to the FAA and agree to arbitrate disputes over arbitrability. Plaintiffs ignore the delegation clause completely, as well as settled law rebutting their claims about California law. Finally, Plaintiffs offer no sound objection to applying the first-to-file rule, which favors sending this lawsuit to the same court that is already adjudicating the same basic claims in *Rittmann*.

## II. ARGUMENT

### A. The FAA requires arbitration.

#### 1. *Lopez* confirms Amazon's interpretation of *Saxon*.

As Amazon explained, *Saxon*'s two-step framework for the exemption reveals that Plaintiffs belong to the class of local delivery drivers and that this class of workers is not exempt because they are not directly and actively involved in transporting goods across state lines. Mot. 6-10. The Fifth Circuit recently interpreted *Saxon* precisely the same way. *Lopez*, 47 F.4th at 431-33.

The *Lopez* plaintiff "was a local delivery driver for Cintas Corporation," which meant "he

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

AMAZON'S REPLY ISO MOTION TO
COMPEL ARBITRATION

picked up items from a Houston warehouse (items shipped from out of state) and delivered them to local customers." *Id.* at 430. The court noted that *Saxon*'s interpretation of Section 1's language required it to "determine the relevant 'class of workers' by the work that Lopez actually did at Cintas." *Id.* at 431. Although "Lopez describe[d] himself as a 'last-mile driver,'" the Fifth Circuit recognized that Lopez's own activities qualified as local delivery: "pick[ing] up items from a local warehouse and deliver[ing] those items to local customers, with an emphasis on sales and customer service." *Id.* at 431-32. Consistent with Amazon's approach here, the court therefore defined the relevant class of workers as "local delivery drivers," and noted that the same class of workers were at issue in prior Amazon Flex cases. *Id.* at 432 (citing *Rittmann*, 971 F.3d at 915-19; and *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 13 (1st Cir. 2020)); *cf.* Mot. 7-8.

Having defined the relevant class as local delivery drivers, the Fifth Circuit asked "whether, after *Saxon*, a class of workers a step removed from the airline cargo loader in *Saxon* is 'engaged in foreign or interstate commerce.'" *Lopez,* 47 F.4th at 432 (quoting 9 U.S.C. § 1). The court answered no, applying the test *Saxon* requires: local delivery drivers are not "directly involved in transporting goods across state or international borders," are not "actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce," and do not "play a direct and 'necessary role in the free flow of goods' across borders." *Id.* at 432-33 (quoting *Saxon*, 142 S. Ct. at 1789-90). Rather, "local delivery drivers take items from a local warehouse to local customers" and "enter the scene after the goods have already been delivered across state lines." *Id.* at 432. "Once the goods arrived at the Houston warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce." *Id.* at 433.

If anything, the record makes this case even easier. Plaintiffs do not dispute that for 99% of California brown box orders—the sorts of orders that potentially include items shipped across state lines—this class of workers is not just one "step removed from the airline cargo loader," as the Fifth Circuit characterized the *Lopez* drivers. *Id.* at 432; *see* Mot. 9. This class of workers is *several* steps removed from the interstate transportation: distinct classes of workers (not the Amazon Flex drivers) unloaded the interstate trucks, sorted and arranged the items, loaded intrastate trucks, drove those intrastate-bound trucks to a California delivery station, unloaded those intrastate trucks, and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

AMAZON'S REPLY ISO MOTION TO
COMPEL ARBITRATION

sorted and arranged the items once more for Amazon Flex delivery drivers to pick up and load into their personal cars. Mot. 9-11. And nearly three-quarters of California brown box orders start their journey to the customer from a California fulfillment center, while nearly two-thirds of California delivery blocks do not even involve brown-box packages, but rather locally stocked items, like Whole Foods Market groceries or locally stocked merchandise for same-day delivery. *Id*.

The record thus refutes Plaintiffs' characterization of Amazon Flex drivers as delivering goods "fresh from out-of-state." Dkt. 44 ("Opp.") at 10. Plaintiffs do not dispute that items in California fulfillment centers have been sitting there over 30 days on average, Mot. 8, or that deliveries of items that were outside California when the customer ordered them make up under 10% of California Amazon Flex drivers' work, Mot. 11. Plaintiffs submit no facts disputing that roughly 90% of the time, the delivered items require no interstate transportation to move between their resting place, at the time of order, and the customer. Mot. 11. Nor do they challenge that 99% of the time there is a full, distinct phase of *intra*state transportation after items arrive in California before Amazon Flex drivers have any involvement with them. Mot. 9.

Even more so than *Lopez*'s "local delivery drivers [who] take items from a local warehouse to local customers," Amazon Flex drivers like Plaintiffs "enter the scene after the goods have already been delivered across state lines." *Lopez*, 47 F.4th at 432. And here, just as in *Lopez*, "[o]nce the goods arrived at the [in-state] warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce." *Id.* at 433.

    **2.    Plaintiffs improperly constrict *Saxon* and expand *Rittmann*.**

Plaintiffs say *Saxon* "conclusively leaves *Rittmann* in place" because the Supreme Court did not need to resolve local drivers' status to decide the status of airplane cargo loaders. Opp. 10. But Plaintiffs ignore that the Supreme Court found local drivers to present a *more difficult* issue than cargo loaders because local drivers are "further removed from the channels of interstate commerce or the actual crossing of borders." *Saxon*, 142 S. Ct. at 1789 n.2. Cargo loaders, on the other hand, were directly and actively involved in the goods' transit across state lines because "one who loads cargo on a plane bound for interstate transit is intimately involved with the commerce (*e.g.*, transportation) of that cargo." *Id.* at 1790. Plaintiffs turn the Supreme Court's view upside down

by portraying local drivers as more clearly exempt. *See* Opp. 13. But local delivery drivers, who use completely separate personal vehicles to deliver items that already have come to rest in a state, have zero involvement in the cross-border transportation, unlike cargo loaders. To be exempt from the FAA, Plaintiffs must belong to a class of workers "directly involved in transporting goods across state or international borders." *Saxon*, 142 S. Ct. at 1789; *accord Lopez*, 47 F.4th at 432. Any less of a connection to cross-border transportation is insufficient.

Plaintiffs also err in trying to paint *Rittmann*'s (and their own) heavy reliance on Amazon's business as compatible with *Saxon*'s instructions. The Supreme Court did not say, as Plaintiffs argue, that "the nature of the business would not *alone* exempt workers who are not engaged in the movement of goods." Opp. 14. It said that the exemption turns on what the *class of workers* actually does. *See Saxon*, 142 S. Ct. at 1788; *Lopez*, 47 F.4th at 431.

Even if *Rittmann* were still good law, Plaintiffs fail to show that it controls the very different record here. Because the undisputed facts show that roughly 90% of Amazon Flex deliveries in California involve goods that already came to rest in California by the time of customer order, Plaintiffs rewrite *Rittmann* to extend to items that originated outside of California sometime *before* the customer bought them. Opp. 7, 12-15. Even without the benefit of *Saxon*, however, the Ninth Circuit rejected this view: the exemption is "about what the worker does, not just where the goods or people have been." *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 865 (9th Cir. 2021) (citation, quotation marks, and brackets omitted).

What *Rittmann* actually held was that local drivers are exempt when they make deliveries as "part of a continuous interstate transportation" of goods that are on "interstate journeys" to the customers who bought them. 971 F.3d at 916. The question, for the *Rittmann* majority, was whether the goods were in an Amazon warehouse in a different state than the customer when the customer entered into the transaction. On the record before it (which was based on a declaration describing the facts about Amazon Flex as of December 2016), the court decided that when Amazon customers place orders, the goods often must journey to those customers across state lines and "do not 'come to rest'" in the customer's state when the goods make a brief stop, en route, at the delivery station where the local driver picks them up. *Id.*; *see also Immediato v. Postmates, Inc.*, No. 20-cv-12308,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

AMAZON'S REPLY ISO MOTION TO
COMPEL ARBITRATION

2021 WL 828381, at *2 (D. Mass. Mar. 4, 2021) (describing how *Rittmann* viewed "the in-state warehouse [as] simply a staging stop in the interstate journey"). The court thought that the goods were "not held at warehouses for later sales" to in-state purchasers. 971 F.3d at 916.

Here, the record shows the opposite. Again, roughly 90% of the time, the goods *are* at rest at a California fulfillment center or another California facility like Whole Foods Market when the customer begins the transaction. Amazon Flex drivers do not frequently participate in a "continuous" interstate transportation because the vast majority of goods are at rest in California when the California customer orders them. And, importantly, Plaintiffs cite no case applying the FAA exemption to workers who deliver goods that are in the same state as the customer at the time of purchase.[1] A wealth of authority, which Plaintiffs largely ignore, holds otherwise. *See* Mot. 9. Plaintiffs pretend that only restaurant-meal deliveries qualify as truly local, Opp. 9, 13-14, but courts have drawn the same conclusions about locally stocked groceries and same-day merchandise, even under *Rittmann*'s framework, *see* Mot. 9.

Most fundamentally, Plaintiffs never explain how delivering goods whose cross-border travel ended before any customer ordered them could possibly qualify as exempt under *Saxon*. At most, they argue that Amazon Flex drivers are "necessary" to a customer's receipt of goods. Opp. 14 ("the only way for the buyer to get their hands on that good is if it is delivered to their door, in this case by a Flex driver"). But that is not the test under *Saxon*—and untrue in any event. Amazon customers have several options to collect orders without delivery through Amazon Flex, including through pickups at Amazon or Whole Foods locations or through third-party delivery. Magee Decl. ¶¶ 6-7. In short, even when the delivered items have "arrived at the warehouse from out of state," local delivery drivers do not "play a direct and 'necessary role in the free flow of goods' across borders" and thus "are not so 'engaged' in 'interstate commerce' as [9 U.S.C.] § 1 contemplates." *Lopez*, 47 F.4th at 430, 432-33 (quoting *Saxon*, 142 S. Ct. at 1790).[2]

---

[1] Plaintiffs cite *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 897 (7th Cir. 2009), but it is irrelevant because it discusses standards under the Motor Carrier Act, not the FAA.
[2] Plaintiffs emphasize the Supreme Court's denial of Amazon's petitions in *Rittmann* and *Waithaka*. But denials of certiorari "impart[] no implication or inference concerning the Court's view of the merits." *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 365 n.1 (1973).

### B.  State law requires arbitration.

Plaintiffs argue that their arbitration agreements are also unenforceable under state law, supposedly because: (1) certain plaintiffs assented only to the First TOS, not later versions selecting Delaware law as a fallback to the FAA; (2) the choice of Delaware law is unenforceable; and (3) the agreements are not enforceable under California law, either. Plaintiffs are wrong on all counts.

#### 1.  Three Plaintiffs clearly must arbitrate under the Third TOS.

Plaintiffs concede that three of them accepted the Third TOS by clicking acceptance to those terms through the Amazon Flex app. Opp. 8, 16; *see* Mot. 3, 5. Their only objection to arbitrating under the Third TOS's fallback selection of Delaware arbitration law is the argument that this choice of law is supposedly unenforceable under *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1151 (Cal. 1992). *See* Opp. 16-19. But this argument ignores that the Third TOS has a delegation provision, under which the contracting parties agreed to submit disputes over arbitrability to the arbitrator. Mot. 4, 6, 13 n.1. Such disputes include the *Nedlloyd* challenge Plaintiffs raise against the choice-of-law provision, as explained by the cases Amazon cited. *See* Mot. 13 n.1 (citing *Parker v. New Prime, Inc.*, No. 20-cv-3298, 2020 WL 6143596, at *4 (C.D. Cal. June 9, 2020), and *Ratajesak v. New Prime, Inc.*, No. 18-cv-9396, 2019 WL 1771659, at *5 (C.D. Cal. Mar. 20, 2019)). In both *Parker* and *Ratajesak*, plaintiffs argued that their arbitration agreements were exempt from the FAA and that the agreements' fallback choice of Missouri arbitration law was invalid under *Nedlloyd*, but the courts ruled these "claims under *Nedlloyd* [were] premature" because the contracts "delegated this question to the arbitrator." *Parker*, 2020 WL 6143596, at *4.

The three Plaintiffs bound by the Third TOS cannot escape its delegation provision without challenging it specifically. *Ratajesak*, 2019 WL 1771659, at *5. But they did not and could not challenge the delegation provision, and so must arbitrate their choice-of-law argument against arbitration, just as they must arbitrate any unconscionability challenge. *See, e.g.*, *id.*; *Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233, 1241 (N.D. Cal. 2019) (Donato, J.) ("The Court declines to consider whether the arbitration clause itself is unconscionable because that question was delegated under the terms of service, and Williams did not challenge the delegation.").

Were the choice-of-law challenge for this Court to resolve, it would still fail. Plaintiffs

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

6

AMAZON'S REPLY ISO MOTION TO
COMPEL ARBITRATION

correctly identify *Nedlloyd*'s adoption of § 187 of the *Restatement (Second) of Conflict of Laws*, Opp. 17, but then inexplicably apply § 188—a distinct section that applies only "[i]n the absence of an effective choice of law by the parties" under § 187. *Restatement* § 188(2). The correct provision, § 187, supports applying the chosen Delaware arbitration law. In *Romero v. Watkins & Shepard Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at *2 (9th Cir. Aug. 19, 2021), the Ninth Circuit held that a Nevada choice-of-law provision was enforceable under *Nedlloyd*, and required arbitration even though the contract was exempt from the FAA, because the defendant's incorporation in the state of Nevada was "a contact sufficient to allow the parties to choose that state's law," and because the plaintiff had failed to demonstrate that "the chosen state's law [was] contrary to a *fundamental* policy of California." *Id.* So too here: Amazon "is incorporated in the state of Delaware, and therefore has a substantial connection with the selected forum," *Gardensensor, Inc. v. Stanley Black & Decker, Inc.*, No. 12-cv-3922, 2012 WL 12925714, at *4 (N.D. Cal. Oct. 25, 2012), and Plaintiffs identify no contrary fundamental California policy under *Nedlloyd*.[3]

### 2. Seven additional Plaintiffs must arbitrate under the Second TOS.

The same reasoning applies to the seven Plaintiffs who, though they did not accept the Third TOS in 2021, accepted the Second TOS starting in 2019. *See* Mot. 3. Like the Third TOS, the Second TOS selects Delaware arbitration law as a fallback to the FAA and contains a delegation provision requiring arbitration of Plaintiffs' arbitrability disputes. Mot. 3-4. So the discussion above for the three Third TOS Plaintiffs applies equally to the seven Second TOS Plaintiffs.

Plaintiffs' only counterargument specific to the Second TOS is the contention that those seven Plaintiffs did not assent to the new version. Opp. 15-16. They do not dispute, however, that individual users of a service manifest assent when they receive individualized email notice of a terms-of-service update and continue to use the service. *See, e.g.*, *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (Donato, J.). Plaintiffs instead rely exclusively on *Jackson v. Amazon.com, Inc.*, which found insufficient evidence in the record in that

---

[3] Plaintiffs state that adhesive choice-of-law provisions "should not be enforced if to do so would result in a 'substantial injustice,'" Opp. 18 n.18, but never explain how the provisions here do that. *See, e.g.*, *Discover Bank v. Superior Ct.*, 134 Cal. App. 4th 886, 897 (2005) (this "substantial injustice" exception requires proof the "provision was included . . . by improper means or mistake").

case that the "email provided Plaintiff individualized notice of the 'agreement's existence and contents.'" 559 F. Supp. 3d 1132, 1141 (S.D. Cal. 2021) (citation omitted).

While Amazon respectfully disagrees with *Jackson*'s view of the evidence in that case (which is currently on appeal), *Jackson* does not support Plaintiffs because the record here is different. Plaintiffs wrongly assert that both cases involve "precisely the same evidence." Opp. 16. But in fact, the *Jackson* plaintiff's objection was that Amazon had "not provide[d] the Court with a copy of the [update] email or state[d] 'whether the 2019 TOS was sent as a separate email or as part of an email dealing with another aspect of the Amazon Flex program.'" *Id.* at 1138. Here, in contrast, the record includes the update email drivers received in 2019, which unmistakably explained that the TOS was updating and that continued use of the Amazon Flex app would result in acceptance of the updated terms. Dkt. 43-1, Ex. E. "Courts have found that when [users] receive emails such as this one, continued use of the service or product constitutes assent to the updated terms." *Webber v. Uber Techs., Inc.*, No. 18-cv-2941, 2018 WL 10151934, at *4 (C.D. Cal. Sept. 5, 2018). These seven Plaintiffs must arbitrate under the Second TOS and its delegation provision.

### 3. California law requires all Plaintiffs to arbitrate.

The six Plaintiffs who accepted only the First TOS must nonetheless arbitrate under California law. (Likewise, if the ten Plaintiffs who accepted the Second and Third TOS were not required to arbitrate under those agreements and Delaware law, they would still have to arbitrate under California law through their undisputed acceptance of the First TOS.) Plaintiffs are wrong to argue (1) that the arbitration agreement in the First TOS is somehow lawless if the FAA exemption is triggered and (2) that California law does not support enforcement of that arbitration agreement.

First, California law is clear that the First TOS did not need to include a California choice-of-law provision for the California Arbitration Act ("CAA") to govern as a fallback to the FAA. In *Garrido v. Air Liquide Industrial U.S. LP*, 241 Cal. App. 4th 833, 839-41 (2015), the choice-of-law provision subjected the arbitration agreement to the FAA, but the FAA exemption applied, with no mention of California law as a fallback. The court explained, though, that "[n]othing in the CAA . . . requires that an arbitration agreement explicitly reference the CAA to be enforceable under California law." *Id.* at 841; *see also* Mot. 14. Plaintiffs ignore that under this very authority, the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

AMAZON'S REPLY ISO MOTION TO
COMPEL ARBITRATION

*Jackson* court applied California arbitration law to the First TOS, recognizing that its "plain language" did *not* "preclude application of California law to the arbitration provision in absence of the FAA." 559 F. Supp. 3d at 1143. The court also rejected Plaintiffs' attempt to rely on *Rittmann*'s state-law analysis, noting that *Rittmann* did not consider applying California law. *Id.* at 1142 n.2.

Second, the arbitration agreements are enforceable under California law. *Gentry v. Superior Court*, 165 P.3d 556 (Cal. 2007), which invalidated class action waivers in certain circumstances, has no bearing because Plaintiffs do not assert class claims. *See, e.g.*, *Tura v. Med. Shoppe Int'l, Inc.*, No. 09-cv-7018, 2010 WL 11506428, at *13 (C.D. Cal. Mar. 3, 2010) (holding that class action waiver was "simply irrelevant to the case at hand" because it was "not being brought as a class action"); *see also Monex Deposit Co. v. Gilliam*, 671 F. Supp. 2d 1137, 1147 (C.D. Cal. 2009) (declining to consider challenge to class action waiver where claims were not asserted on behalf of a class); *Faggiano v. CVS Pharmacy, Inc.*, 283 F. Supp. 3d 33, 37 (E.D.N.Y. 2017) (collecting cases). And Plaintiffs' conclusory mention of *Gentry* is in any event inadequate to show that it weighs against enforcement of the class action waiver. *See Romero*, 2021 WL 3675074, at *2.

Nor have Plaintiffs come close to meeting their "burden of proving unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012). Contrary to Plaintiffs' premise, the arbitration agreement in the First TOS is not an adhesive take-it-or-leave-it agreement; Plaintiffs had an easy opportunity to opt out of the provision, but did not do so. Mot. 2. This meaningful opportunity to opt out of an arbitration provision eliminates any procedural unconscionability argument. *E.g.*, *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002); *Lacour v. Marshalls of CA, LLC*, No. 20-cv-7641, 2021 WL 1700204, at *6 (N.D. Cal. Apr. 29, 2021). Regardless, a "take-it-or-leave-it" arbitration provision presents only minimal procedural unconscionability—not a "high degree," as Plaintiffs contend. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261-62 (9th Cir. 2017); *Jacobson v. Snap-on Tools Co.*, No. 15-cv-2141, 2015 WL 8293164, at *4 (N.D. Cal. Dec. 9, 2015) (Donato, J.). Nor can Plaintiffs prevail through unsupported assertions about discovery limitations or California public policy. *See, e.g.*, *Poublon*, 846 F.3d at 1251 (rejecting unconscionability argument in context of California employee-misclassification claims). The applicable AAA rules (in addition to requiring a written

award) allow arbitrators to permit discovery on a showing of "good cause." *See* Rules R-48(a), E-5(b), https://www.adr.org/sites/default/files/Commercial_Rules_Web.pdf. This "good cause" provision is like the provision upheld in *Poublon*, 846 F.3d at 1271—not the stricter, "substantial need" provision in *De Leon v. Pinnacle Prop. Mgmt. Servs., LLC*, 72 Cal. App. 5th 476, 488 (2021).

### C. The first-to-file rule applies.

Alternatively, the Court should apply the first-to-file rule. Plaintiffs do not deny that they fall within *Rittmann*'s putative class and assert the same basic misclassification theory. They merely insist they have a right to opt out of the *Rittmann* class if it is ever certified. But they would have no right to opt out of a Rule 23(b)(2) class for injunctive relief, nor is there any guarantee they all actually would opt out of a Rule 23(b)(3) damages class. Besides, Plaintiffs cite no cases in which the first-to-file rule was thought inapplicable merely because the first action was a class action and the later action was not. In fact, courts recognize that plaintiffs in later actions are *not* exempt from the first-to-file rule merely because they choose to file individual actions. *See, e.g.*, *Prestige Transp. Inc. v. U.S. Dep't of Homeland Sec.*, No. 20-cv-1562, 2020 WL 6260019, at *3 (C.D. Cal. Sept. 9, 2020) (transferring individual action based on earlier-filed putative class action); *Chan v. C&S Wholesale Grocers Inc.*, No. 13-cv-6357, 2013 WL 12306481, at *2-3 (C.D. Cal. Oct. 11, 2013) (same). That scenario still presents the problems the rule aims to avoid, including a "burden . . . on the federal judiciary by duplicative litigation" and "possibility of conflicting judgments." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013).

### III. CONCLUSION

For all these reasons, the Court either should compel arbitration and stay the litigation, or should dismiss, stay, or transfer this action under the first-to-file rule.

Dated: September 29, 2022                MORGAN, LEWIS & BOCKIUS LLP

By   /s/ Brian D. Fahy
     Max Fischer
     Brian D. Berry
     Brian D. Fahy
     Miranda M. Rowley

Attorneys for Defendants
AMAZON.COM INC and
AMAZON LOGISTICS, INC.